ALICE M. ALLAN, Respondent, v. THE STATE STEAMSHIP COM-
PANY (Limited), Appellant.

By the statute of Great Britain, known as the "Passengers' Act 1855"
every passenger ship is required to carry a duly qualified medical practi-
tioner and its owner or charterer is required to provide for the use of its
passengers a supply of proper and necessary medicines for their medical
treatment during the voyage, properly packed and placed under the
charge of a medical practitioner "to be used at his discretion." In an
action to recover damages against a corporation of Great Britain for injur-
ies alleged to have been sustained by plaintiff, a passenger on one of its
steamers, alleged to have resulted from taking calomel furnished by the
steamer's physician in response to a request for "quinine," it appeared
that defendant issued a prospectus to advertise its line, which contained
a statement that an experienced surgeon was carried on board each ship
and that all medicines were supplied gratis. *Held*, that defendant
assumed no duty or liability beyond those imposed by the statute, *i. e.*,
to employ a duly qualified physician, to provide a supply of suitable
and necessary medicines, properly packed and labeled and to provide a
proper place in which to keep them; and that, having complied with
these requirements, for errors and mistakes on the part of the physician
thereafter, it was not responsible.
It appeared that in the outset of the voyage the medicines were inspected,
as required by the statute, by the medical examiner at the port from
whence the steamer sailed and they were then properly packed and
labeled. Plaintiff produced evidence to the effect that on the evening
when she applied for the medicine the "surgery" where the medicines
were kept was in disorder and confusion, the bottles being out of place,
and the trial court left it to the jury to determine whether the condition
of the "surgery" was such as to show want of ordinary care on the
part of defendant in providing and properly labeling medicines or left
them open so that a mistake was likely to occur. *Held*, error; that the
evidence of confusion and disorder after the steamer went to sea and
after the medicines were put in charge of the physician, did not justify
a finding of negligence on the part of defendant.
*Van Wyck* v. *Allen* (69 N. Y. 62) and *Thomas* v. *Winchester* (6 N. Y. 397),
distinguished.

(Argued February 1, 1892; decided March 8, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made February 11, 1890, which affirmed a judgment in favor

of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial, and also appeal from order of said General Term, made May 12, 1890, which affirmed an order denying a motion to dismiss the complaint.

This action was brought to recover for injuries alleged to have been sustained by the plaintiff upon a voyage from Glasgow to New York on the steamer "State of Georgia," being the result of taking a dose of calomel which was furnished to her by the physician on board said steamer in response to a request for five grains of " quinine."

The material facts appear in the opinion.

*Wm. D. Guthrie* for appellant. Defendant was not liable for any mistake or act of carelessness or negligence on the part of the surgeon. (*Laubheim* v. *D. N. S. Co.*, 107 N. Y. 228; *Secord* v. *S. P. & M. R. Co.*, 18 Fed. Rep. 221; *O'Brien* v. *C. S. S. Co.*, 28 N. E. Rep. 266.) The English Passenger Act of 1855, provides that the medicines, etc., shall be "placed under the charge of the medical practitioner, * * * to be used at his discretion." The defendant could not legally disregard this provision. The prospectus, therefore, if embodied in the contract of carriage, must be read in connection with the statute which regulated the subject-matter. (2 Pars. on Cont. 500; *Van Schoonhoven* v. *Curley*, 86 N. Y. 187; *Yates* v. *People*, 32 id. 509; *Erskine* v. *Davis*, 25 Ill. 251.) Evidence of confusion and disorder in the surgery on the twenty-seventh of August, twenty-four hours after the vessel had left Glasgow, had no tendency whatever to show that there was any disorder or confusion when the vessel left the home port or any confusion or disordered of sufficient standing to have raised a presumption of notice to the principal. (*Village of Port Jervis* v. *F. N. Bank*, 96 N. Y. 550; Penal Code § 404; *Heaney* v. *L. I. R. R. Co.*, 112 N. Y. 122; *Toomey* v. *L. B. & S. C. R. Co.*, 3 C. B. [N. S.] 146; *Lafflin* v. *B. & S. W. R. R. Co.*, 106 N. Y. 136; *Loftus* v. *U. F. Co.*, 84 id. 455; *Dongan* v. *C. T. Co.*, 56 id. 1; *Bowen* v. *N. Y. C. & H. R. R. R. Co.*, 18 id. 408; *Mandeville* v. *Reynolds,*

68 id. 528.)   Conceding for the sake of argument, that there was disorder in the surgery for which the defendant was responsible, the complaint should, nevertheless, have been dis- missed, because there was no evidence tending to show that this condition of the surgery caused the injury. (*Dobbins* v. *Brown*, 119 N. Y. 118; *Searles* v. *M. R. Co.*, 101 id. 661; *Taylor* v. *City of Yonkers*, 105 id. 202.)   Having once objected to evidence as to the surgeon's condition and behavior, it was not necessary to repeat the objection to the same class of testimony, and its reception was error. (*Sherman* v. *D., L. & W. R. R. Co.*, 106 N. Y. 542, 547; *Church* v. *Howard*, 79 id. 415, 421; *Dilleber* v. *H. L. Ins. Co.*, 69 id. 256, 260; *Anderson* v. *R., W. & O. R. R. Co.*, 54 id. 334; *Arthur* v. *Griswold*, 55 id. 400; *Taber* v. *Van Tassel*, 86 id. 642; *Erben* v. *Lorillard*, 19 id. 299.)   The plaintiff could not recover any special damages. (*Uransky* v. *D. D., E. B. & B. R. R. Co.*, 118 N. Y. 304; *Gunib* v. *T. T. S. R. Co.*, 114 id. 411; *Baldwin* v. *W. R. R. Co.*, 4 Gray, 333; *Taylor* v. *Town of Monroe*, 43 Conn. 36.)

*M. L. Towns* for respondent.   It being conceded that some measure of care was required, the rule of the court requiring only ordinary care was favorable to defendant. (*Thomas* v. *Winchester*, 6 N. Y. 397; *Van Wyck* v. *Allen*, 69 id. 52; *Horn* v. *Meakin*, 115 Mass. 326; *Treadwell* v. *Whittier*, 80 Cal. 575.

BROWN, J.   The learned counsel for the respondent con- tends that when the plaintiff applied for quinine she had a right to rely upon receiving that medicine, and if she was given anything else the defendant was liable for the injuries sustained, and that mistake upon the part of the physician having charge of the ship's medicines was not a defense.

*Van Wyck* v. *Allen* (69 N. Y. 62), and *Thomas* v. *Win- chester* (6 id. 397), are the authorities cited in support of that proposition.

The first case was an action upon contract for breach of an implied warranty.   The main question there decided related

to the rule of damages. The case has no application to an
action for a wrong which has its foundation in the violation of
a duty entirely outside of and beyond the stipulations of the
contract. _Thomas_ v. _Winchester_ was decided upon the negli-
gence of the defendant. The trial court charged the jury that
"if the defendant was guilty of negligence in putting up and
vending the extracts in question, the plaintiff was entitled to
recover," and this court held that the liability of the defendant
did not arise out of any contract or direct privity between him
and the plaintiff, but out of the duty imposed upon him to
avoid acts in their nature dangerous to the lives of others.
And in carelessly labeling a deadly poison as a harmless medi-
cine and sending it so labeled into the market, the court found
the negligence upon which a recovery was sustained.

But whether the druggist, who made the immediate sale of
the poison to the plaintiff, would have been liable to her, or
whether he was justified in selling the article upon the faith of
the defendant's label, was not in that case decided.

That precise question was decided, however, in _Brown_ v.
_Marshall_ (47 Mich. 576) and in _Beckwith_ v. _Oatman_ (43 Hun,
265).

In both of these cases a recovery was permitted by the trial
courts upon proof of the fact of a sale of poison to a person
who called for a harmless drug, and the question of negligence
was withdrawn from the consideration of the jury over the
defendant's objection and exception.

In both cases the exception was sustained, the appellate
courts holding that a failure on the part of the druggist or his
clerk to exercise due care and skill must be proved.

We quote with approval from the opinion of Judge C_OOLEY_
in the Michigan case : " The question is whether the delivery
at a drug store of a deleterious drug to one who calls for one
that is harmless, and a damage resulting therefrom, of them-
selves, give a right of action even though there may have been
no intentional wrong and the jury may believe there is no neg-
ligence. That such an error might occur without fault on the
part of the druggist or his clerk, is readily supposable. He

might have bought his drugs from a reputable dealer, in whose warehouse they have been tampered with for the purpose of mischief. It is easy to suggest accidents after they come to his own possession, or wrongs by others, of which he would be ignorant and against which a high degree of care would not give perfect protection. But how misfortune occurs is unimportant if, under all circumstances, the fact of occurrence is attributable to him as a legal fault. The case is one in which a high degree of care may justly be required.   *   *   *   It is proper and reasonable that the care required shall be proportionate to the danger involved. But we do not find that the authorities have gone so far as to dispense with actual negligence as a necessary element in the liability when a mistake has occurred."

No case is cited which conflicts with the rule thus stated, and I think no authority to the contrary exists in this state.

The rule of liability applicable to a druggist in cases of this character is the same as that which governs the liability of professional persons whose work requires special knowledge or skill, and a person is not legally responsible for any unintentional consequential injury resulting from a lawful act when the failure to exercise due and proper care cannot be imputed to him, and the burden of proving such lack of care, when the act is lawful, is upon the plaintiff. (*Brown* v. *Marshall, supra; Thomas* v. *Winchester, supra; Beckwith* v. *Oatman, supra; Losee* v. *Buchanan,* 51 N. Y. 476–488; *Carpenter* v. *Blake,* 75 id. 12; *Morris* v. *Platt,* 32 Conn. 75; *Simonds* v. *Henry,* 39 Me. 155; *Fleet* v. *Hollenkemp,* 13 B. Mon. [Ky.] 219.)

Negligence of the defendant, therefore, being the foundation of the plaintiff's cause of action, we proceed to the consideration of the facts of the case.

The defendant was a common carrier of passengers, and we need not discuss whether the common law imposed upon it any duty to treat those who were sick, nor whether it made it responsible for their proper care or management.

The duty that it assumed in this respect in this case was

imposed upon it by the statute of Great Britain under the laws of which it was incorporated.

That statute, known and cited as " The Passengers' Act, 1855," and entitled " An act to amend the law relating to the carriage of passengers by sea," passed August 14, 1855, enacts :

1. (§ 41.) That "Every passenger ship shall    *    *    * carry a duly qualified medical practitioner who shall be rated on the ship's articles."

2. (§ 43.) " The owner or charterer of every passenger ship shall provide for the use of the passengers a supply of medicine    *    *    * proper and necessary for diseases    *    *    * incident to sea voyages and for the medical treatment of the passengers during the voyage ; and such medicines    *    *    * shall in the judgment of the emigration officer at the port of clearance be good in quality and sufficient in quantity for the probable exigencies of the intended voyage, and shall be properly packed and placed under the charge of the medical practitioner    *    *    * to be used at his discretion."

3. (§ 44.) " No passenger ship    *    *    * shall clear out or proceed to sea until some medical practitioner to be appointed by the emigration officer at the port of clearance shall have inspected such medicines    *    *    * as are required to be supplied by the last section    *    *    * and shall have certified to the said emigration officer that the said ship contains a sufficient supply, etc."

And by section 42 it was further provided that " no medical practitioner should be considered to be duly qualified for the purposes of this act unless authorized by law to practice in some part of her Majesty's dominions as a physician, surgeon or apothecary, nor unless his name shall have been notified to the emigration officer at the port of clearance and shall not be objected to by him."

It was alleged and proved that the defendant, for the purpose of advertising its line, issued a prospectus which contained the following statement: " An experienced surgeon is carried on board every ship    *    *    *.    All medicines, medical comforts and attendance required are supplied gratis."

This prospectus it will be observed went no further in its representation than the requirements of the statute.   A medical practitioner duly qualified as required by the provisions of the act quoted may fairly be assumed to be referred to and the fact that no charge was made for medicines neither added to nor qualified the duty resting upon the defendant under the law.   The defendant's liability must be sought for in its failure to perform the duty imposed upon it by the statute.

Beyond that it had assumed none and had none to perform and consequently violated none owing to its passengers.   If the things which the statute required it to do were performed with due and proper care, its duty to the passengers was discharged.

The obligations imposed by the statute were twofold. First, to employ a duly-qualified physician, and second, to provide a supply of medicines properly packed and labeled and suitable and necessary for disease incident to sea voyages. When these two things had been done and the certificate of their performance given by the government officers the ship was permitted to proceed upon its voyage and the medicines were from that time under the charge of the physician to be used at his discretion.   No negligence is claimed to exist in the performance of either of these duties.   No evidence was offered that the supply of medicine was insufficient in quantity or quality and the respondent's counsel concedes that the competency of the physician was established and the court charged the jury that for his negligence the defendant was not responsible.

The plaintiff, however, gave evidence by a passenger that he applied to the physician for medicine on the same evening that the plaintiff did and that he found the " Surgery " where the medicines were kept in disorder and confusion.   That some of the bottles were in the racks and others on the racks and looked as if they were out of place, and it was by the trial court left to the jury to determine whether the " Surgery " was in such a condition of confusion as to show that the company did not use ordinary care in providing medicines and properly

labeling them, or left them open so that a mistake was very liable to occur.

As already stated there was no evidence of a failure to provide an adequate and proper quantity of medicine of good quality and none that they were not properly packed and labeled or that the " Surgery " was not properly fitted up or that it was an improper place for the purposes designated.

All the evidence on that subject came from the defendant and was to the effect that all that the statute required was done and that the government officers certified to its performance. The negligence charged, therefore, rests in the confusion in the " Surgery " and the disarrangement of the bottles. It was affirmatively shown by defendant that between Glasgow and Greenock during the first two hours of the voyage the medicines were inspected by the medical examiner of the port of Glasgow with the assistance of the physician and that they were then properly packed and labeled and placed in the racks. The statute required that they should then be placed under the charge of the physician and be used at his discretion.

The medical examiner of the port left the vessel about six o'clock on the evening of the first day of the voyage, and the plaintiff applied for medicine about eight o'clock in the evening of the following day, and the question presented, therefore, is whether the testimony of confusion in the surgery or disorder in the arrangement of the medicine existing after the vessel put to sea and after the medicines were placed in charge of the physician, was evidence of such neglect of duty on the part of defendant as to render it liable for such injuries as the plaintiff sustained. We think it was not. Any other construction must assume that the ship owner is bound to exercise some supervision over the physician in his treatment of the passengers and his arrangement of the medicine. But no officer on the ship is competent to do that. The very object of the statute is that a skilled professional man shall be on board the ship to attend the passengers in case of sea sickness and dispense the drugs and medicines. Can we hold that a sailor shall have supervision over the doctor, or that an unskilled

man with no ability to tell one drug from another shall have authority over the skilled experienced physician? To so hold would nullify the law, and put inexperience over experience and ignorance where the law requires knowledge and professional skill.

When the ship owner has employed a competent physician duly qualified as required by the law and has placed in his charge a supply of medicines sufficient in quantity and quality for the purposes required which meet the approval of the government officials and has furnished to the physician a proper place in which to keep them, we think it has performed its duty to its passengers. That from that time the responsible person is the physician, and errors and mistakes occurring in the use of the medicines are not chargeable to the ship owner and that no different rule is applicable to such mistakes as are the result of improper arrangement in the care of the medicines than to those which are the result of errors in judgment.

The work which the physician does after the vessel starts on the voyage is his and not the ship owner's.

It is optional entirely with the passengers, whether or not they employ the physician. They may use his medicines or not as they choose. They may place themselves under his care or go without attendance as they prefer, and they determine themselves how far and to what extent they will submit to his control and treatment. The captain of the ship cannot interfere. The physician is not the ship owner's servant, doing his work and subject to his direction. In his department, in the care and attendance of the sick passengers, he is independent of all superior authority except that of his patient, and the captain of the ship has no power to interfere except at the passenger's request. These views find support in *Laubheim* v. *DeK. N. S. Co.* (107 N. Y. 229), and in *Obrien* v. *Cunard S. S. Co.* (28 N. E. Rep. [Mass.] 266).

The first case arose before congress had legislated upon the subject, but it was said in the opinion that "if by law or by choice the defendant was bound to provide a surgeon for its ship, its duty to the passengers was to select a reasonably

competent man for that office, and it is liable only for a neglect of that duty." The Massachusetts case was decided upon a statute of the United States similar to that of Great Britain and it was there said that the ship owners "do their whole duty if they employ a duly qualified and competent surgeon and medical practioner and supply him with all necessary and proper instruments, medicine and medical comforts and have him in readiness for such passengers as choose to employ him."

We think that is the extent of the requirment of the statute in this case and if there was any common-law liability resting upon the defendant to make provision for the care and attendance of its passengers when sick, it was no greater than that imposed by the statute.

These views lead to the conclusion that the evidence failed to show the neglect of any duty which the defendant owed to the plaintiff, and the motion to dismiss the complaint should have been granted.

The judgment should be reversed and a new trial granted. All concur.

Judgment accordingly.