[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 236 
On the application of the relator, the state board of charities, the courts below have awarded a peremptory mandamus commanding the defendant to permit the relator to visit the buildings and grounds and to inspect the books and papers of the former and to give full information concerning the operations of the society and to comply with the rules and regulations of the board in the management of its corporate affairs. The question presented by this appeal is whether there was power in the courts to award the writ.
The state board of charities asserts that the defendant is subject *Page 238 
to visitation, and to such rules and regulations as that body may enact for the government of certain corporations, and the better management of their affairs, and the defendant denies the existence of any such power. By the provisions of the Constitution (Art. 8, §§ 11, 14) and the statutes enacted in pursuance thereof (Laws 1895, chap. 771; Laws 1896, chap. 546), the right of visitation with respect to all "charitable institutions," is conferred upon the state board of charities, with power to enact rules and regulations for their government and the management of their affairs. It follows, therefore, that if the defendant is a charitable institution within the meaning of the Constitution and the statute, that the writ was properly granted, but if it does not properly fall within that particular class of corporations, the board of charities has no jurisdiction over it. The contention of the defendant is that it does not belong to the class of corporations subjected by these provisions of law to visitation and regulation, and, hence, the only question to be considered is whether the defendant is a charitable institution or corporation within the meaning of the Constitution and the statute. On the argument here, and in the discussion in the courts below, various considerations were urged and discussed that we think have no legitimate bearing upon this question. It may be useful to notice them now, since the discussion of any question of this character will always be advanced by excluding at the outset all arguments and considerations that are manifestly irrelevant.
It is said that this corporation, in order to promote the objects of its incorporation, has been given legal capacity to take and administer gifts and bequests that would be called charitable under the statute of Elizabeth and under general rules of law applicable to trusts, and all that is quite true. But it is an error to conclude that a corporation must necessarily be of a charitable nature because it has capacity to take and administer such gifts. A very large class of corporations may do that without affording the slightest ground for an argument that they are or must be charitable institutions or corporations. *Page 239 
Colleges, academies and nearly all institutions of learning or of a literary character, and even cities, villages and other municipal corporations, may take and administer such gifts, but that fact cannot in the least affect their true character or convert them into charitable institutions, and, of course, this observation applies to all those receiving voluntary donations as well as bequests properly so called in testamentary instruments. The fact that the property of this corporation is exempt by statute from taxation only shows that it enjoys a special privilege in common with a great many other corporations that no one can claim to be of a charitable nature. Indeed, the manner in which the exemption was made tends only to show that the lawmakers did not consider the defendant as embraced in the class of corporations designated as charitable, since, if it did, there could be no necessity for enacting the statute of 1890, which gave the exemption to this corporation by name. Charitable institutions were already exempt, and it is only on the theory that the defendant did not belong to that class that a new and special law was necessary.
The defendant receives under the charter of New York the sum of thirty thousand dollars annually from the city treasury to promote the objects of its organization. But in receiving and disbursing that sum of money, it neither receives nor administers any charity, but is simply allowed something by the city for doing work that otherwise would devolve, as we shall see hereafter, on the police department, and which the society can do better and with much less expense than the police. The fact that the president of this corporation and the then mayor of New York, when commending its work to the public, described it as an institution founded on the broadest principles of charity, has no weight in the determination of the question involved in this appeal. A corporation cannot be classified by what its friends or promoters may say about it, but only from the nature of the powers which it may lawfully exercise and the business in which it is lawfully engaged. It is manifest, therefore, that in any inquiry concerning the nature, character or classification *Page 240 
of any particular corporation, the only safe guide is the charter or law of its creation prescribing the powers that it may exercise and defining the nature of the business or the duties for which it was created. The defendant was incorporated under a general law enacted for the express purpose of giving to such societies a corporate organization (Laws 1875, chap. 130). This act provided that any five or more persons of full age, a majority of whom shall be citizens of, and residents within, this state, who shall desire to associate themselves together for the purpose of preventing cruelty to children, may become incorporated by making and acknowledging a certificate in which, among other things, the name of the corporation shall be given, with the particular business and objects of the corporation, and filing the same in the proper county clerk's office and in the office of the secretary of state, after having first procured the written consent of a justice of the Supreme Court to the incorporation. The certificate of the founders of this corporation was filed April 27, 1875. The name selected was that which the defendant now bears and the objects of the corporation are stated in the following words: "The particular business and objects of this society are the prevention of cruelty to children and the enforcement by all lawful means of the laws relating to or in anywise affecting children."
This corporation was, therefore, created for the purpose of enforcing laws enacted to prevent cruelty to children, and that is the only object or purpose of its existence. The means by which it is enabled to fulfill the purpose of its creation were also provided in the law of its creation, and are there stated as follows: "Sec. 3. Any society so incorporated may prefer a complaint before any court or magistrate having jurisdiction for the violation of any law relating to or affecting children, and may aid in bringing the facts before such court or magistrate in any proceeding taken. Sec. 4. All magistrates, constables, sheriffs and officers of police shall, as occasion may require, aid the society so incorporated, its officers, members and agents in the enforcement of all laws *Page 241 
which now are or may hereafter be enacted, relating to or affecting children." The powers and functions of the corporation have been enlarged from time to time by additional statutes that operate as amendments to the general law under which it was formed, and these statutes, or most of them, are found in the Criminal Code. (Code Crim. Pro. §§ 292, 749, 154; Laws 1888, chap. 490; Penal Code, § 293.) The learned judge who gave the opinion below summarized in clear and concise language the various and extensive powers and functions that this corporation may exercise under these statutes substantially as follows: "The society receives on commitment, upon and subject to the order of the court, all children charged with the commission of crime in the county of New York who, otherwise, would be sent to the city prison; that it also receives temporarily, upon the order of a court, children who are the victims of physical violence in the county, or who are held as witnesses there pending the criminal prosecution of an offender; that it has authority to receive under commitment to itself, at its own expense, children under the age of sixteen — an authority which, however, is but rarely exercised; that the children so committed are retained temporarily and, as soon as circumstances permit, transferred to other institutions. While thus temporarily retained, they are properly cared for. Isolating rooms are provided for those who suffer from contagious disease, and a skilled nurse is always in attendance, who enforces every ordinance of the board of health and every suggestion of the society's physicians relative to the health of the children. The society also receives and takes to court, without delay, children found in a state of destitution, for disposition by the court as prescribed by the statute. It maintains two officers in every police court, who, upon the order of the magistrate, investigate applications for the commitment of the children and make written reports in regard thereto for the information of the magistrate. It receives the money which parents are required, under the orders of a magistrate, to appropriate from their weekly earnings to the support of committed children, and it pays these moneys over to the comptroller. If *Page 242 
these moneys are not paid, it compels their payment by prosecution. It defends in the courts the custody of children committed to institutions through its instrumentality; prepares briefs for the district attorney's office in cases of cruelty where an indictment has been found; secures the attendance of witnesses, and assists the district attorney in the procuring and preservation of evidence. * * * We quite agree with the society that the furnishing temporarily of shelter, food, clothing and medical attendance are incidental to its main purpose. The test of its character is undoubtedly the objects which it seeks to attain as specified in the law of its being and — following that law — in its certificate of incorporation. (Fire Ins. Patrol v.Boyd, 120 Penn. St. 624.)" The learned court then proceeded to show that all these things were charitable acts, and, hence, that the defendant was a charitable institution. It is at this point in the reasoning process that we are constrained to differ from the learned court below. It is very clear that this corporation was created and exists for the sole purpose of enforcing the criminal laws to prevent cruelty to children, and can be called a charitable institution only in the same sense that the term would apply to any other corporation organized to aid in the enforcement of any other branch of the criminal law. All the things that it does or can do would naturally and primarily devolve upon the police department, and the society exists only because it can do the work of the police more efficiently than they can. The mind does not naturally or readily accept the assertion that a corporation possessing only such functions is a charitable institution in any fair or proper sense, and it is only by refined and elaborate argument that the first and most natural impression can be removed. Some of these arguments have been already noticed, and I have attempted to point out their true weight and proper value, but the one which embodies the fundamental error pervading the whole discussion remains to be considered.
In a very broad and general sense it may doubtless be said that any individual or corporation that does anything to avert *Page 243 
or alleviate human misery or human suffering in any of their varied forms without gain or reward is engaged in a work of charity. All good works of this description generally proceed from motives of charity, and it is in that sense only that the defendant can with any propriety be called a charitable institution. But it is obvious that upon an inquiry with respect to the true legal meaning of a charitable institution, as that term is used in the Constitution and the statutes, that line of argument is misleading and fallacious, since it proves altogether too much. It would embrace a great variety of corporations that have never been and are not now classed as charitable in any legal sense. It would include all organizations of a religious or benevolent character, all educational institutions and all fraternal societies like the Masons and Odd Fellows, since they all possess some feature that might be called charitable. It would include every society for the prevention of crime, or for the promotion of temperance, the elevation of the condition of the Indians or the colored people in the south, and even societies formed to mitigate the calamities of war and to promote peace. Surely we cannot impute to the framers of the Constitution and the statute an intention to use terms in such a vague and general sense. Reasonable certainty is a quality that we are accustomed to ascribe to all laws and especially to constitutional or statutory enactments. Rules of human action expressed in vague language and rendered still more uncertain by loose interpretation are frequently, in a measure, quite as mischievous and oppressive as those ancient edicts which, it is said, were purposely placed so high in the air that the people were unable to read or understand them. The charitable institutions referred to in the Constitution and the statute are those that have long been known and recognized as such by legislators and other officers engaged in the administration of the state government. The visitorial power of the state board of charities over such institutions is not new. It was conferred by the same act which created the board (Laws 1867, chap. 751, as amended by Laws 1873, chap. 571). The present Constitution added *Page 244 
nothing to these powers, except the right to make rules for the government of such institutions as were subject to visitation. If the defendant is a charitable institution, subject to such visitation, it has been such for nearly a quarter of a century, since the day of its creation.
The powers of the board over charitable institutions originated in the abuses supposed to exist in the appropriation and expenditure of public money for charitable purposes. Therein is to be found the reason of the law, and it is safe enough to assume that a corporation that does not fall within the reason of the enactment is not a charitable institution, even though engaged in a good and laudable work without gain or reward. The board was empowered to deal with charitable institutions, not in the broad and general sense to which I have referred, but in the more limited and restricted sense in which these terms are used in the Constitution and the statute. The scheme of state supervision was not intended to apply to every institution engaged in some good or commendable work for the relief of humanity from some of the various ills with which it is afflicted, but only to those maintained in whole or in part by the state or some of its political divisions through which charity, as such, was dispensed by public authority to those having a claim upon the generosity or bounty of the state. These are the only institutions that are within the reason or policy of the law, and when thus limited and restricted there is still ample scope for its application. It will apply to all institutions, public or private, that give public pecuniary relief in that form commonly called charity when we refer to the administration of government, and it will exclude only those institutions that ask nothing in the form of charity from the state though they may be engaged in some good work in their own way that might be called charitable in the sense that it is unselfish and voluntarily assumed.
There is such a plain distinction between the charity which the state dispenses by statute, and that which is voluntarily extended by private benevolence, either through individuals or societies with a corporate organization, that there will be *Page 245 
little practical difficulty in fixing the limits of supervision by the state board of charities. There are numerous incorporated missionary societies in this state that in a large sense might be called charitable institutions, since the object of their creation and existence is the dissemination of religious ideas, not only at home but throughout the world, even in regions the most remote. They are maintained by private bequests, voluntary donations and collections made in the various churches. They have legal capacity to receive and administer all such gifts, as we know from the very frequent controversies that come before us concerning the validity of such bequests in wills. But no one, I think, will contend that the state board of charities has any right to an inspection of the books and papers of these corporations, or to make rules for the transaction of their business, for the obvious reason that they are not the charitable institutions that come within the purview of the Constitution or the statutes. The charity with which the state is concerned is something quite different. That consists in the distribution of relief or public aid, the fruit of taxation levied alike upon the willing and the unwilling. The right of visitation and regulation applies only to those institutions, public or private, through which the state fulfills this function. They alone are within the reason of the law, and, consequently, within its scope and operation. One of the most familiar rules of statutory construction is that general words must be limited to the particular purpose or end which the lawmakers had in view. They must be understood and applied in the special sense in which they are used by legislators. What may be called governmental charity, or charity based upon public taxation and administered by a system of statute law, is a very different thing from the charity that moved the good samaritan and prompted the widow's mite. The power of visitation and regulation applies to those institutions administering charity of the former kind in whole or in part, but not to those voluntarily engaged in some good work of the latter character. They are left by the state to *Page 246 
manage their own affairs in their own way, or, at all events, are not within the jurisdiction of the state board of charities. That jurisdiction can then be defined by the application of a very just and simple test. If the particular institution, whether public or private, receives public money for use or distributionas charity and not for some other reason or some other purpose, that institution is subject to visitation by the board, but this system of state supervision does not extend to the efforts of private benevolence. That may flow in various channels not subject to state regulation, since the government is in no way concerned with it.
If the thirty thousand dollars which the defendant receives from the city could in any proper or legal sense be called charity, there might be some foundation for the claim that it is within the jurisdiction of the board, although that sum is but a very small part of the annual expenses. But obviously it is not paid or received as a charitable contribution. The state in its political divisions expends large sums of money to prevent or punish crime, including the crime of cruelty to children. No one can very well claim that those moneys, expended in the enforcement of the criminal law, are paid for charity, and yet that is the very purpose for which the city contributes this money to the defendant, and, hence, it cannot give to the corporation the character of a charitable institution any more than it could to the police department when expended there for services of a similar kind. The defendant receives no public money for charitable uses, and administers no charity in any legal sense. The fact that it feeds, clothes and cares for children temporarily, while detained as witnesses or victims of cruelty pending the prosecution of the offenders in the courts, is admitted to be but an incident of its main purpose and character. The place where the children are thus temporarily maintained could more properly be classified as a house of detention than as a charitable institution. The main reasons in the court below for the decision were based upon the English cases defining what were considered bequests or gifts for charitable uses. That *Page 247 
argument has been already noticed. It is only necessary to add that if we were to hold that every corporation with capacity to take and administer such a gift or bequest is a charitable institution within the meaning of the Constitution and the statute, we would have to include a great number of corporations whose objects are entirely foreign to any work of charity, even in the broadest sense. Capacity to take a bequest proceeding from charitable motives is no real test of the class to which the corporation taking it belongs.
The power to make rules for the government of a corporation implies the right to participate in its management in some degree at least. It is difficult to see how the efficiency of the one now in question can be promoted by dividing its powers and functions between its regular officers and a central board at the capital of the state. In order to properly discharge the peculiar functions conferred by the law of its creation, the defendant must act promptly and summarily, not by written rules, but according to the circumstances of every case. It is engaged in the stern task of making war upon crime and vice in peculiar forms, and it would be just as impracticable to interfere by hard and fast rules with freedom of action as it would be to plan the details of a military campaign in the cabinet instead of trusting to the judgment and discretion of the commanding officer in the filed. The legislature evidently understood that corporations of this character are not subject to the jurisdiction of the state board of charities since it has provided that they are subject to visitation by the Supreme Court, and it appears that this power has been exercised with respect to this particular corporation. (Laws 1899, chap. 360.) It is scarcely conceivable that it was intended to subject the defendant to two distinct and different methods of state supervision.
There is nothing in these views that conflicts with the decision of the court in the case of People ex rel. New YorkInstitution for the Blind v. Fitch (154 N.Y. 14). It was held in that case that the word "charitable," as used in the Constitution and the statute, conferring the powers referred to upon *Page 248 
the state board of charities, was to be given only its usual and ordinary meaning. Within that definition a corporation, created and existing to aid in the enforcement of the criminal law to prevent cruelty to children, cannot be held to be a charitable institution. That case decided that the institution then involved was partly educational and partly charitable, and that so far as it was engaged in educating, clothing and maintaining blind children who were indigent, it was a charitable institution, but was not such as to the children who paid for their own tuition. The real question in that case was whether any of the inmates of the institution could properly be called indigent, in view of the fact that they were selected and placed there by the state without regard to their circumstances, and whether the clothing and maintenance were not merely incidental to the purpose of education. There is such a wide difference between an institution for maintaining indigent blind children and a corporation created to aid in the enforcement of the criminal law to prevent cruelty to children that both cannot be placed in the same class.
The order of the Appellate Division and the Special Term should be reversed and the application denied, with costs in all courts to the defendant.