(59 App. Div. 63.)

### COLLINS v. NEW YORK POST–GRADUATE MEDICAL SCHOOL & HOSPITAL.

(Supreme Court, Appellate Division, Second Department.   March 8, 1901.)

1. PHYSICIANS AND SURGEONS—MALPRACTICE—CHARITABLE HOSPITAL.
     A charitable medical institution is not liable for the negligence of its surgeon in operating on a patient gratuitously, where such institution exercises due care in employing a surgeon deemed competent.

2. SAME—FEES AND TUITION.
     A medical institution endowed as a charitable organization, and which renders services gratuitously, does not lose its character as such, so as to render it liable for the negligence of its surgeon in operating on a patient, because it teaches medicine for tuition fees, and because, where the patient is able to pay, it also charges a small fee for room, board, nursing, etc., but no fee as between the doctor and patient.

Appeal from trial term, Kings county.

Action by Nicholas Collins against the New York Post-Graduate Medical School & Hospital.   From a judgment dismissing the complaint, plaintiff appeals.   Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

Charles Haldane, for appellant.
George M. Brooks, for respondent.

HIRSCHBERG, J.   The action is for damages resulting from alleged negligence.   The complaint charges that on or about June 3, 1898, the plaintiff applied to the defendant for admission into its hospital for treatment, and was accepted for that purpose, he then suffering from a disease and injury necessitating an operation as for an indirect inguinal hernia upon the left side of his body; that on the following day the defendant, by its physicians, surgeons, agents, and servants, and other persons, performed an operation upon plaintiff as for an indirect inguinal hernia upon the right side of his body, while he was under an anæsthetic, insensible, and unconscious; and that the defendant in so conducting the operation acted in a careless, negligent, reckless, and improper manner,—in so acting without regard to the known condition of plaintiff, and in so operating

upon the side of plaintiff's body unaffected by disease or injury,—to his damage, etc.   The defendant by its answer denies the negligence alleged, and asserts, by way of a separate defense, that its hospital is a charitable institution;   that the medical and surgical attendance and ministrations furnished the plaintiff were furnished free;   and that they were so accepted by the plaintiff.

The New York Post-Graduate Medical School & Hospital was created by chapter 438 of the Laws of 1886;   the object of the incorporation being the establishment of a school for the further instruction of persons already possessing the degree of doctor in medicine, and a hospital for the treatment of diseased and injured persons in the city and county of New York.   It had no capital stock;   its funds being derived from public and private donations, from devises and bequests, the board of paying patients, and the tuition fees. By chapter 385 of the Laws of 1895 the board of estimate and apportionment of the city of New York was authorized to provide for an annual payment to the corporation of the sum of $30,000 for its "charitable uses and purposes."   The tuition fees range from $40 to $100 a course, amounting in the aggregate to a considerable sum annually, all of which is devoted to the support of the hospital.   The officers, directors, faculty, physicians, and surgeons render their services gratuitously, and any one may receive medical and surgical treatment free.   Nothing is ever charged for medical services.   If an emergency patient wishes to pay a fee for medical services, it may be done, but the fee is paid at the office as a gift to the hospital. Those who are able to pay are charged eight dollars per week for room, board, nursing, medicines, dressings, and the services of the house staff, which Dr. Roosa testified meant "that they are to understand that they have nothing more to pay;   that by no chance shall any house doctor undertake to get a fee out of them.   The charges that we impose include everything that is done for them there.   We have a house staff.   It includes all they ever do.   It includes what the nurses do and what they do,—everything except a medical fee. A fee between a doctor and a patient,—that it does not include." The plaintiff, being ruptured, as stated in the complaint, on the left side, applied for admission to the hospital for the purpose of undergoing an operation, bringing with him a card from his own physician stating that fact, and giving the true location of the hernia.   The house physician examined him and confirmed his doctor's diagnosis. He arranged with the clerk at the desk for the payment of the required eight dollars weekly, and he paid that sum during the four weeks he was in the hospital.   The second day he was placed under the influence of an anæsthetic, and the operation performed in the presence of the students, after a preliminary lecture to the class by one of the attending physicians.   The operation was performed on the right side, which was in a perfectly healthy and normal condition, and the plaintiff was obliged to and did afterwards submit to another operation at another hospital for the removal of the hernia diagnosed by his doctor.   The surgeon who performed the operation which is the subject of complaint had been subjected to a competitive examination before being accepted by defendant's board of exam-

iners, and, before the operation in question, was regarded by the de-
fendant as skillful and competent.

However opinions may differ on the question of the policy of ex-
empting charitable institutions from the ordinary rule of respondeat
superior, the law is too well settled in this state to permit a recovery
against the institution for the wrong committed by the surgeon who
operated upon the plaintiff gratuitously. While the precise question
does not yet appear to have been passed on by the court of appeals,
it has been decided adversely to the right of action a number of times
at the circuit and the general terms. Proctor v. Eye & Ear Hospital
(Sup.) 15 N. Y. Supp. 621; Eibes v. College Hospital (Sup.) 15 N. Y.
Supp. 621; Pryor v. Eye & Ear Hospital (Sup.) 15 N. Y. Supp. 621,
note; Van Tassell v. Same, 39 N. Y. St. Rep. 781, 15 N. Y. Supp. 620;
Joel v. Woman's Hospital, 89 Hun, 73, 35 N. Y. Supp. 37. In the
last case cited, Mr. Justice Brown said (page 74, 89 Hun, and page
37, 35 N. Y. Supp.):

"Van Tassell v. Eye & Ear Hospital, 39 N. Y. St. Rep. 781, 15 N. Y. Supp.
620, presented a case similar to that now before this court; and it was there
decided by the general term of this department that the defendant was not
liable, except for the omission to exercise due care in the selection of its sur-
geons and other employés. In the absence of any controlling authority in
this state, we are bound by that decision. The great weight of authority,
however, supports the ruling of the trial court. McDonald v. General Hos-
pital, 120 Mass. 432; Insurance Patrol v. Boyd, 120 Pa. 624, 15 Atl. 553; Doyle
v. Eye & Ear Infirmary, 80 N. Y. 631; Harris v. Woman's Hospital, 27 Abb.
N. C. 37, 14 N. Y. Supp. 881; Allan v. Steamship Co., 132 N. Y. 91, 30 N. E.
482, 15 L. R. A. 166; O'Brien v. Steamship Co., 154 Mass. 272, 28 N. E. 266,
13 L. R. A. 329. In the case of Glavin v. Rhode Island Hospital, 12 R. I. 411,
the ruling of the trial court to which exception was taken was much broader
than in the case before us. In that case a verdict was directed for the de-
fendant on the ground that a public charitable corporation was exempt from
liability for any negligence on the part of its trustees, agents, etc. While
there is very much in the opinion tending to support the appellant's contention,
the case as presented by the exception is not necessarily an authority in her
favor."

In Laubheim v. Steamship Co., 107 N. Y. 228, 13 N. E. 781, an
action was brought for damages resulting from unskillful treatment
by defendant's ship surgeon. There was at the time no law requiring
the company to provide a surgeon, but this was done voluntarily,
and he was paid an annual salary, and a certain sum in addition for
each passenger carried. In affirming a judgment of nonsuit, the
court said (page 230, 107 N. Y., and page 781, 13 N. E.):

"If, by law or by choice, the defendant was bound to provide a surgeon for
its ships, its duty to the passengers was to select a reasonably competent man
for that office, and it is liable only for a neglect of that duty. Chapman v.
Railway Co., 55 N. Y. 579; McDonald v. General Hospital, 120 Mass. 432;
Secord v. Railway Co. (C. C.) 18 Fed. 221. It is responsible solely for its own
negligence, and not for that of the surgeon employed. In performing such duty
it is bound only to the exercise of reasonable care and diligence, and is not
compelled to select and employ the highest skill and largest experience."

To the same effect is Allan v. Steamship Co., supra,—a case which
arose under a statute requiring the owner of passenger ships to pro-
vide for the use of passengers medicines for their necessary treat-
ment during the voyage, under the charge of a medical practitioner;
and it was held that neither the statute nor the common law im-

posed any liability on the owner, if he employed a duly-qualified and competent man, and supplied him with the necessary medicines and instruments. The court said (page 99, 132 N. Y., and page 485, 30 N. E.):

"When the shipowner has employed a competent physician, duly qualified, as required by the law, and has placed in his charge a supply of medicines sufficient in quantity and quality for the purposes required, which meet the approval of the government officials, and has furnished to the physician a proper place in which to keep them, we think it has performed its duty to its passengers; that from that time the responsible person is the physician, and errors and mistakes occurring in the use of the medicines are not chargeable to the shipowner; and that no different rule is applicable to such mistakes as are the result of improper arrangement in the care of the medicines than to those which are the result of errors in judgment."

See, also, Railway Co. v. Artist (C. C.) 60 Fed. 365; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602; Powers v. Homœopathic Hospital (C. C.) 101 Fed. 896; Insurance Patrol v. Boyd, 120 Pa. St. 624, 15 Atl. 553, 1 L. R. A. 417; City of Philadelphia v. Pennsylvania Hospital, 154 Pa. St. 9, 25 Atl. 1076; Gooch v. Association, 109 Mass. 559; Hearnes v. Waterbury Hospital, 66 Conn. 99, 33 Atl. 595, 31 L. R. A. 224.

Many of the cases cited are authority for the proposition that the fact that the institution receives pay patients does not change its status as a charitable organization. "The character of the institution is in no way changed by the fact that a patient or inmate of a private charitable hospital or asylum, who is financially able to pay wholly or in part for his board, treatment, and care generally, will usually be required to do so. Where the funds so received are disbursed further to aid and relieve suffering in the legitimate mission of the hospital or asylum, the law will regard them as an incidental addition to the trust fund or income." 15 Am. & Eng. Enc. Law (2d Ed.) p. 759. This doctrine was applied to the question of taxation, in this department, in People v. Purdy, 58 Hun, 386, 12 N. Y. Supp. 307, and has been held, in addition to many of the cases already cited, in American Asylum for Deaf & Dumb v. Phœnix Bank, 4 Conn. 178, and St. Joseph's Hospital Ass'n v. Ashland Co., 96 Wis. 636, 72 N. W. 43.

The fact that the defendant charged tuition fees, and that the operations were a necessary incident to successful teaching, and that in that sense the defendant may be said to have been paid for the operation, does not change the relation of the parties to each other. In the Laubheim Case, supra, the defendant charged passenger fares, and the voluntary employment of a paid physician for the voyage was doubtless an inducement to ship by its line; but the circumstance was not regarded as sufficient to impose any liability not predicated upon a failure to exercise due care in the selection of the physician. The plaintiff makes no claim that he was to pay for the operation, or that he expected to do so. In the performance of the operation, so far as the plaintiff was concerned, the defendant was engaged solely in charitable work; and its corporation must therefore be regarded as a charitable institution, as to him, in that respect. It engaged to furnish him with a room, board, and attendance at a

stipulated weekly sum, and with a surgeon to operate for nothing. When it had furnished a surgeon selected with proper care, and with no reason to believe him to be negligent or incompetent, it fulfilled its duty. It did not control him in the performance of the operation, and must be held free from liability for his want of care until some controlling decision shall disturb the existing current of authority. The case of Ward v. St. Vincent's Hospital, 39 App. Div. 624, 57 N. Y. Supp. 784, is not authority to the contrary. There the injury complained of was received in consequence of the negligence of the nurse, for whose services the plaintiff had paid, or agreed to pay, the defendant. The action was not for negligence, but for damages for the breach of an express contract, by which the defendant had agreed to provide the plaintiff with a skillful, trained, and competent nurse, and which contract the court held the defendant had power to make and had broken. The court refused to decide whether, in the absence of the contract, the negligence complained of would have involved a breach of duty, but reversed the judgment solely on the ground that it did involve the breach of a contractual obligation lawfully assumed. Here, however, no contract is alleged or proven, and the case has no application.

The appellant insists that the decision of the court of appeals in the case of People v. New York Society for Prevention of Cruelty to Children, 161 N. Y. 233, 55 N. E. 1063, is authority for the proposition that the defendant's corporation is not of a charitable nature, in the view of the law. The question there applied to the scope of certain sections of the state constitution, and laws passed pursuant to them, giving power of visitation to the state board of charities. It was held that the society appellant was not a charitable institution, within the meaning of the constitution and laws referred to, inasmuch as the sole purpose of its existence was the enforcement of the criminal laws to prevent cruelty to children, and not the dispensing of charity, as such. The court found the reason of the law then under consideration to lie in the abuses supposed to exist in the appropriation and expenditure of public money for charitable purposes, and stated in the opinion, per O'Brien, J. (page 244, 161 N. Y., and page 1066, 55 N. E.), that "it is safe enough to assume that a corporation that does not fall within the reason of the enactment is not a charitable institution, even though engaged in a good and laudable work without gain or reward." There was nothing in the decision intended to conflict with the previous decision in People v. Fitch, 154 N. Y. 14, 47 N. E. 983, 38 L. R. A. 591; and there is certainly nothing in the letter or the spirit of the decision which tends in any degree to enhance the liability of the defendant for the negligent act of a doctor not in its pay, while engaged in the performance of an operation upon one who had voluntarily requested treatment, without charge or the expectation of a fee therefor.

The judgment should be affirmed, with costs. All concur.