(36 South. 117.)

No. 14,856.

### STATE v. NEW ORLEANS WATER SUPPLY CO.*

(Jan. 18, 1904.)

CORPORATIONS — DISSOLUTION—APPOINTMENT OF LIQUIDATOR — ACTION BY STATE — NEW COMPANY—RIGHTS OF STOCKHOLDERS.

1. Where the charter of a waterworks company was forfeited by judgment of the state court, and thereupon a receiver was appointed by the United States Circuit Court, who, under its orders, took possession of and operated the plant, and where nearly one year subsequently a liquidator was appointed by the Governor under the statutes to administer the assets of the dissolved corporation, and said liquidator was made a party to the suit in the federal court, and by plea asserted his superior right to the custody and administration of said assets, the state has no standing to litigate the rights of the liquidator with the stockholders of the defunct company and a new corporation organized by them, having neither possession nor control of said assets.

2. The object and purpose of a corporation must be determined from the provisions of its charter, and not from the declarations or acts of its officers or agents. The defendant stockholders had the right to organize the new corporation for the purpose of supplying water to the city of New Orleans and its inhabitants, and, to that end, for the further purpose of purchasing the plant of the former company. They also had the legal right to sell to said corporation for its shares of stock all their right, title, and interest in the assets of the dissolved corporation, subject to the payment of debts and costs of administration.

3. The burden of proof is on the state to show that defendant has issued fictitious stock. Where the evidence leaves the question of value in doubt, and, in the nature of things, the residuary interest of the stockholders cannot be ascertained until the plant is sold, and the affairs of the corporation liquidated, the demand of the state for the forfeiture of charter should be nonsuited.

Nicholls, C. J., dissenting in part.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

—————

*Rehearing denied March 14, 1904.

Action by the state against the New Orleans Water Supply Company. Judgment for defendant, and plaintiff appeals. Amended and affirmed.

Walter Guion, Atty. Gen. (Benjamin Rice Forman, of counsel), for appellant. Farrar, Jonas & Kruttschnitt, for appellee.

### Statement of the Case.

LAND, J. The state, in its petition, represents that in January, 1899, it had filed in the district court for the parish of Orleans a suit to forfeit the charter and franchises of the New Orleans Waterworks Company, a corporation created by Act No. 33 of 1877.

That on the 6th of November, 1901, the Supreme Court in said cause adjudged and decreed that there be judgment in its favor against the defendant therein, decreeing the forfeiture of the charter and all the franchises heretofore conferred upon it. That said judgment became final on the 3d of February, 1902, and said corporation ceased to exist or to have any further rights or franchises after that date. That although on February 10, 1902, one of the justices of the Supreme Court of the United States allowed a writ of error to issue to the Supreme Court of Louisiana without a supersedeas, the Supreme Court of the United States dismissed the writ of error for want of jurisdiction on the 5th of June, 1902.

That the public policy of the state and the public interests of the inhabitants, especially of the city of New Orleans, according to section 731 of the Revised Statutes, was that "whenever the charter of any corporation in this state shall be decreed forfeited by any competent court, the district attorney of the district shall forthwith inform the Governor of the fact, who shall thereupon appoint a liquidator to take charge of and liquidate the affairs of the corporation as in case of insolvent individuals," by which was meant that the property of the defunct corporation should be sold, the costs and expenses deducted, its debts paid, and the residue. if any, distributed among those who hold the stock of the said defunct corporation, and who thereby became owners in indivision of all its property, subject to the right of the state to liquidate its affairs. The district attorney had notified the Gov-

ernor of such decree of forfeiture, and he had appointed John W. Castles, Esq., as liquidator, pursuant to section 731, Rev. St., and Act No. 224 of 1902, amending and re-enacting section 731, Rev. St., and that he had been recognized by the court, and qualified according to law.

That when the judgment and decree of forfeiture of the charter and all the franchises of the New Orleans Waterworks Company became final, 3d February, 1902, that corporation ceased to exist. Its physical property was held thereafter in indivision by those persons who had been stockholders, subject to the right of the state to sell the property and liquidate the affairs of said defunct corporation.

That certain persons, whom it named, who were on 3d February, 1902, stockholders of the New Orleans Waterworks Company, illegally conspiring together how to defeat the decree of forfeiture aforesaid, and how to defeat the sale of the physical property of the later New Orleans Waterworks Company, and the liquidation of its affairs, and illegally to endeavor to prolong the franchise of the said defunct corporation, passed before Abraham Goldberg, notary public, on the 9th day of May, 1902, an act which purported to be and claimed to be an act of incorporation of the New Orleans Water Supply Company, and caused it to be recorded in the mortgage office and published, falsely pretending to have a capital of $2,000,000, when in truth and fact it had no capital at all, and it was never intended or contemplated by the subscribers to pay the stock subscriptions, but only to exchange the stock of the New Orleans Water Supply Company, share for share, for the stock of the defunct New Orleans Waterworks Company, and for the purpose of evading and avoiding the judgment of forfeiture of its charter and franchises and the legal consequences and effect thereof, to wit, the sale of the physical property, the pumps, real estate, pipes, etc., and the liquidation of the affairs of said late New Orleans Waterworks Company, the payment of its debts, and the distribution of the proceeds thereof according to law. And after said illegal act was drawn, purporting to incorporate the New Orleans Water Supply Company, on the 9th May, 1902, and when said act could not

have been and had not been recorded or published for 30 days, as required by law, and when no money, labor or property had been paid for stock, and said New Orleans Water Supply Company could not become and was not a legal corporation, a large number of those who had been stockholders in the defunct New Orleans Waterworks Company, by an act dated 10th May, 1902, transferred their interest in the property of the defunct corporation to the New Orleans Water Supply Company, and others by deed dated 22d May, 1902, and others on 14th June, 1902, and others on 26th September, 1902, some signing in person and some by agents; and thereby they illegally attempted to convey the several undivided interests in the property of the late New Orleans Waterworks Company to the New Orleans Water Supply Company, said property being described:

First. All the personal property of said company, corporeal and incorporeal, of every kind and nature, wherever situated and however constituted, including all suits, claims, rights of actions in warranty or otherwise, and every other right, claim, or privilege pertaining to the New Orleans W. W. Company.

Second. All the pipes, conduits, hydrants, and mains laid under, along and through public and private property in the city of New Orleans.

Third. All the contracts between the late New Orleans Waterworks Company and various persons, firms, and corporations, public and private, and particularly a certain contract made between the New Orleans Waterworks Company and the city of New Orleans on the 3d day of October, 1884, by act of that date, before J. D. Taylor, notary public, relative to furnishing water to the city of New Orleans for 50 years.

Fourth. Certain real estate, which the petition described. The state averred that said acts were void, and in fraud of the right and duty of the state of Louisiana to liquidate the said New Orleans Waterworks Company, sell its assets, and pay its creditors.

That the pipes were worthless without the public franchise to run through the public streets and to sell water to the public, all of which franchises had been forfeited; and in all events the following named transfers were void, even as to the fractions of the property purporting to be conveyed, for want

of legal authority to convey any interest in the property:

Emma Grima, testamentary executrix, $10.

Estate Simon Hernsheim.

Heirs Leon Godchaux.

Estate Jayme Magee.

Germania National Bank.

New Orleans National Bank.

Lafayette Insurance Company.

Estate Gustave Schiff.

And as to said corporations one corporation had no power to join or become a constituent in forming another corporation. That the attempted incorporation of the New Orleans Water Supply Company was in violation of article 266 of the Constitution of this state, because it had issued stock (and in its organization it was the intention of the subscribers to so issue stock), share for share, solely and only in exchange for the stock of the New Orleans Waterworks Company, which was and had been of no value whatever since the 3d February, 1902, for the reasons that the mortgage bonds of said New Orleans Waterworks Company amounted then and amounted still to $645,-000 of principal, besides interest, and there was also an unsatisfied final judgment upon which a writ of fieri facias had been returned "No property found," in the case of Rugers Vinegar Works v. New Orleans Waterworks Company (No. 41,197, civil district court), and besides Mrs. Stempel claimed $25,000 for money loaned, which had not been paid; and it was informed and believed, and so averred, that the tangible physical property belonging to the late New Orleans Waterworks Company and all of its assets were not worth and would not sell for enough to pay its debts, and the said New Orleans Water Supply Company had issued stock to the amount of $1,500,000, and proposed to issue $2,000,-000 of stock, and had not received either labor, money, or property of any sufficient value therefor.

Naming the different parties who had been stockholders of the forfeited corporation who had participated in the acts which the state declared and was seeking to have declared null and void, the petition prayed that they be cited, each of them, and also the New Orleans Water Supply Company, through the president, enjoining them from acting as a corporation, or doing any acts or ex-ercising any powers of a corporation, or in any way interfering with the assets, pipes, pumps, or other immovable or movable physical property or assets of the late and now defunct New Orleans Waterworks Company; that the injunction sued out be made perpetual, and that the pretended charter or act of incorporation of the New Orleans Water Supply Company be declared null and void, and as not creating a corporation, and, in the alternative, that it be forfeited, and each of said acts and deeds be declared null and void, and that the property described be declared and decreed to be delivered to John W. Castles, liquidator of the New Orleans Waterworks Company, and the said defendants condemned in solido to pay the costs of this suit, and for general relief.

The defendants answered, pleading, first, the general issue. Further answering, they averred: That the charter of the New Orleans Water Supply Company was valid in law and in fact, and complied in every respect with the Constitution of the state of Louisiana. That said charter was duly executed on May 9, 1902, and was recorded on that day in the mortgage office of the parish of Orleans, and thereupon it became a going concern. That its charter was duly advertised in the Times-Democrat, a daily newspaper published in the city of New Orleans, the domicile of the company, beginning on the 11th day of May; and a copy thereof, together with due proof of its advertisement, was deposited in the office of the Secretary of State on the 25th day of June, 1902.

That the effect of the judgment of the Supreme Court of Louisiana was to take away the corporate rights and franchises of the New Orleans Waterworks Company, but not to confiscate the corporeal or incorporeal property of the company, nor to deprive the individual stockholders of their rights in and to such corporeal and incorporeal property.

That such stockholders had the right in law to liquidate the affairs of said New Orleans Waterworks Company, and to provide for the disposition of its property, and the payment of its debts in any reasonable and lawful way they might select, without the intervention of the state, which had no interest therein.

That the provisions of sections 731 and 1612 of the Revised Statutes, which were

the law of the state up to July 21, 1902, and were the law when the judgment of the Supreme Court was rendered, and when all the acts complained of in the petition were done and performed, were and are directory, and not mandatory, and did not exclude the stockholders of a dissolved corporation from dealing with the assets thereof as owners, for the purpose of liquidating its affairs.

That no attempt was ever made to place the provisions of said articles into operation, and that in the absence of action by the law officer charged with the powers prescribed in said act the owners of the assets of the late New Orleans Waterworks Company had the right, and lawfully exercised the right, to organize the New Orleans Water Supply Company, and to transfer to that company all the property of the said waterworks company, subject to all of its debts, and in that way to bring about a liquidation of its affairs at the smallest possible cost and loss.

That accordingly the holders of $15918/20000$ of the interests in the property and assets of the late New Orleans Waterworks Company had lawfully transferred their right, title, and interest in and to the property and assets of said company to the New Orleans Water Supply Company, which had assumed their respective shares of the debts of said company. That at the time this suit was brought the board of liquidation of the city debt, which owned $3027/20000$ of said assets, was considering a resolution offered in the board to make a similar transfer. That the owners of only $155/20000$ of such assets, or less than $1/1225$ part, had failed to participate in such transfer, to-wit, 105 shares belonging to the widow and children of F. A. Lambert, and 50 shares belonging to one of the heirs of the estate of Carroll, who was absent in Europe, and could not be communicated with.

That none of the creditors had objected to this method adopted for the liquidation of the affairs of the late New Orleans Waterworks Company, and in fact they had all acquiesced therein. That all the averments in the state's petition charging fraudulent collusion between these defendants to defeat the effect of the judgment of the Supreme Court of Louisiana annulling the charter and franchise of the late New Orleans Waterworks Company were false and untrue.

That the New Orleans Water Supply Company did not, and never did, claim to own or possess any right, privilege, or franchise taken away from said New Orleans Waterworks Company by the judgment aforesaid, but only such rights of property as remained in the individual stockholders of said company, as owners in common, after giving full force and effect to such judgment.

That one of the principal objects and purposes of organizing said New Orleans Water Supply Company was to be able to negotiate with the sewerage and water board of the city of New Orleans for the sale and transfer to said board of all of the property and assets of the late waterworks company; and that negotiations to that end had been opened with said sewerage and water board prior to the time when the suit was brought. That another object was to enable proper negotiations to be entered into with the mortgage creditors of said company.

That the provisions of Act No. 224 of the Acts of 1902, set up in the petition as the ground of the Governor's action in appointing a liquidator in and for the late New Orleans Waterworks Company, could not be applied to these defendants without divesting their vested rights, in violation of article 166 of the Constitution of the state of Louisiana, and by depriving them of their property without due process of law, in contravention of the fourteenth amendment to the Constitution of the United States.

That said law was not approved by the Governor until July 10, 1902, and did not become operative outside of the city of Baton Rouge until late in the month of August, 1902, long after all the acts set up in the petition were accomplished facts.

And defendants charged on information and belief that said act was drawn and its passage promoted by the counsel in this case for the sole purpose of attempting to get control and possession of the assets of the late New Orleans Waterworks Company, which could not be done under existing statutes and the existing facts.

And defendants specially denied all averments in the petition contained relative to the value of the assets and property of the late New Orleans Waterworks Company, and averred that said value exceed the sum of $2,900,000. They averred that the city of

New Orleans paid $2,000,000 in 1869 for part of said physical property; that in 1878 the city sold said property so bought to the New Orleans Waterworks Company for $2,000,000; that the said late New Orleans Waterworks Company during its existence spent the sum of $900,000 in extensions and permanent betterments of said property, and a sum exceeding $300,000 in annual repairs.

They denied that the state of Louisiana had any interest whatever in the disposition of the assets of the late New Orleans Waterworks Company, or any right, power, or authority to sue, and ask that they be delivered to John W. Castles, liquidator.

Defendants denied that they had, or ever had, any possession of any of said assets, for the reason that since the 15th of November, 1901, all of the assets of the late New Orleans Waterworks Company had been continuously in the possession of Frank T. Howard, as receiver, appointed by the United States Circuit Court for the Fifth Circuit and Eastern District of Louisiana, in the case of Robert Moore v. The New Orleans Waterworks Company (No. 12,973 of the docket of the court); that to said suit all of the defendants, either individually or through the New Orleans Water Supply Company, were made defendants, long before the present suit was filed; that to said suit every creditor of the late New Orleans Waterworks Company was also a party, and became such before the petition in the present cause was filed; and that to said suit the said John W. Castles, liquidator, had himself been made a party defendant.

For these reasons defendants pleaded and said that the court had no power or jurisdiction to consider or to decide upon any question as to the right to dispose of or control the assets and property in question then in the possession and control of a court of the United States, which court had before it every person who claimed such assets as owner, creditor, or liquidator.

In view of the premises defendants prayed that the demand of the plaintiffs may be rejected with costs.

The district court rendered judgment in favor of the defendants and against the state dismissing the suit, and the state appealed.

On January 14, 1899, the state of Louisiana filed a suit to forfeit the charter of the New

Orleans Waterworks Company, a corporation created by Act No. 33 of 1877 of the General Assembly of Louisiana.

In its petition the plaintiff did not pray for the appointment of a receiver, but reserved the right to do so later.

On November 6, 1901, this court decreed the forfeiture of the charter and of all the franchises which had been conferred upon it. A rehearing applied for was denied on February 3, 1902.

Thereupon a writ of error was allowed to the Supreme Court of the United States by one of its justices, which was ultimately dismissed by that court for want of jurisdiction; the mandate to that effect being lodged in the state Supreme Court on June 5, 1902.

In the meanwhile, on November 13, 1901, Robert H. Moore, a holder of second mortgage bonds which had been issued by the New Orleans Waterworks Company, filed a bill in the United States Circuit Court for the Eastern District of Louisiana for the appointment of a receiver to the company, and on October 14th the court appointed Frank T. Howard, receiver. He qualified, and went into possession of the property of the late waterworks company.

On January 10, 1902, Moore filed a supplemental bill asking a foreclosure of the mortgage and an extension of the powers of the receivers so as to subject the revenues of the property to the lien of the mortgage. An order of extension was entered.

On September 29, 1902, the Governor of Louisiana appointed John W. Castles liquidator of the New Orleans Waterworks Company. On the 4th of October, 1902, the mandate of the Supreme Court forfeiting the charter of the New Orleans Waterworks Company was filed in the civil district court, and an order was entered recognizing Castles as liquidator appointed by the Governor. His bond was fixed at $100,000, and he qualified as liquidator. On May 23, 1902, Moore had filed an amended and supplemental bill, in which he recited the forfeiture of the charter and franchises of the waterworks company, and made parties therein the water supply company, the defendant in the present action, and the stockholders of the old New Orleans Waterworks Company, who had failed to take part in the organization of the water supply company. In the interval be-

tween November, 13, 1901, and June 12, 1902, numerous persons, firms, and corporations, including among them floating creditors of the late company, filed interventions in the Moore suit.

On October 10, 1902, John W. Castles, liquidator, was made a party to the Moore suit by supplemental bill, and on October 25, 1902, filed his plea to the complainants' bills. On December 18, 1902, Harry T. Howard, a holder of first mortgage bonds, on his own behalf and that of all other bondholders, filed a bill of intervention in the Moore case, making Castles, liquidator, the New Orleans Water Supply Company, and the outstanding stockholders of the later waterworks company, parties, seeking to foreclose the first mortgage on the property of the waterworks company. On this intervention an order was entered extending the receivership for the benefit of the holders of the first mortgage bonds.

On May 9, 1902, a number of individuals, successions, partnerships, and corporations constituting a portion of the stockholders of the waterworks company appeared before A. Goldberg, notary, and executed an act in which they agreed to form a corporation to be named the "New Orleans Water Supply Company," and subscribed $793,300 of the stock as shown in the charter.

The charter was recorded in the mortgage office in New Orleans on the same day. It was published a number of times in the Times-Democrat newspaper, commencing on May 10th, and it was filed in the office of the Secretary of State, with proof of publication, on June 25, 1902.

The third and fourth articles of the act before Goldberg were as follows:

"Article 3. The objects and purposes for which this corporation is established and the nature of the business to be carried on by it, are hereby declared and specified to be to establish, construct, own, operate and carry on a system of works to supply the city of New Orleans and its inhabitants and its suburbs and their inhabitants with water, and to that end, to purchase, own, control and operate the property and works lately controlled owned and operated by the late Company known as the 'New Orleans Waterworks Company'; to supply and sell water to all persons, firms and corporations, public

and private in the City of New Orleans; to fix reasonable water rates, and to make reasonable rules and regulations relative to the supply of water to all persons firms and corporations with whom it may contract, and generally to hold and exercise all such incidental powers and privileges as relate to the objects hereinbefore set forth.

"Article Fourth. The capital stock of this corporation is hereby fixed at the sum of 'two million dollars ($2,000,000)' to be divided into and represented by Twenty Thousand Shares of the sum of one hundred dollars ($100) each. All of the stock of this corporation shall be issued as full paid stock, not subject to assessment, to the stockholders of the late New Orleans Waterworks Company in consideration of the transfer to this Company by said stockholders of all their rights title and interest of every kind and nature in and to all the property, real personal and mixed, corporeal and incorporeal, contracts, money, pipes, mains, hydrants, engines, boilers, pumps, connections tools, implements & of every kind and nature whatsoever, subject however to all of the debts, claims, mortgages and demands of every kind and nature now existing and heretofore created against the said late New Orleans Waterworks Company or its property; there being issued to each of the stockholders of said late N. O. Waterworks Company the same number of shares of stock in this Company that the said stockholders held in the New Orleans Waterworks Company at the time of the dissolution of the charter of said company; said stock to be delivered to said stockholders as soon as they sign a Notarial Act of Transfer of said property, etc., to this Company, and the President of this Company is hereby authorized and empowered to accept any and all transfers made by the stockholders of the late New Orleans Waterworks Company, to this Company of their respective shares or interest in the property, etc., of the said late New Orleans Waterworks Company, and to issue the stock of this Company to said stockholders as soon as the said notarial acts are from time to time signed. No person but one who was a stockholder in the late New Orleans Waterworks Company, shall be permitted to sign this Charter, and all other persons signing the same shall set opposite their

names the number of shares of stock they held in the late New Orleans Waterworks Company, which will represent the number of shares of stock that they are entitled to receive in this corporation, and this corporation shall become a going concern as soon as the holders of five thousand shares (5,000) of the said stock in the late New Orleans Waterworks Company shall have signed this charter, and as soon as this charter is signed and recorded, they shall sign a Notarial Act transferring to this Company as aforesaid all their respective right, title and interest in and to the property etc., of the said late New Orleans Waterworks Company."

Subsequent to this, by separate acts, a portion of the stockholders of the late New Orleans Waterworks Company transferred to the New Orleans Water Supply Company their interest in the old plant in exchange for a corresponding amount of stock in the water supply company, but 155 shares of stock held by private owners and 3,927 shares of stock held by the board of liquidation for the city of New Orleans, these shares, aggregating 4,082 shares, did not join in these acts. The water supply company therefore acquired $^{15918}/_{20000}$ of the old plant. On the 7th of October the present action was brought to annul and forfeit the charter of the New Orleans Supply Company and the said acts on the ground stated in the petition, and praying that the property described be delivered to John W. Castles, liquidator of the New Orleans Waterworks Company.

### Opinion.

1. The liquidator is no party to this suit, and the property is in possession of the United States Circuit Court through its receiver. It would be vain and useless, under such circumstances, to decree the delivery of the property to the liquidator, who is litigating his right of possession contradictorily with the receiver and creditors in the federal court. Moreover, the state has no standing in court to represent the liquidator.

2. The question whether a corporation has been organized for an illegal purpose must be determined by the provisions of its charter, and not by the declarations of its officers or agents. The objects expressed in defendant company's charter are not contrary to law, and the stockholders of the New Orleans Waterworks Company had the right to transfer to the new company all their right, title, and interest in the assets of the former company, subject to payment of debts and liquidation according to law.

3. The state has a standing in court to demand the forfeiture of the charter of defendant company on the alleged ground of the issue of fictitious stock.

The burden of proof is on the plaintiff to show that the stock was issued without consideration or substantial value received by the corporation. The testimony of plaintiff's expert is at least balanced by the testimony of defendant's experts and other evidence. We recognize the extreme difficulty of estimating the value of the plant of the New Orleans Waterworks Company. That company is extinct, with all of its franchises, but the plant is, and will be for several years, at least, absolutely necessary for the comfort, health, and security of the people of the city of New Orleans. The future purchasers will feel assured that the operation of the plant will continue under a license or franchise from the city of New Orleans until some new water system is substituted. Under such circumstances it is difficult or impossible to estimate with any degree of certainty the present cash value of the plant in question. When the plant is sold, or otherwise disposed of, the interest of the defendant stockholders in the residuum after the payment of debts and costs of administration can be readily ascertained, and the question whether such interest is a sufficient legal basis for the issuance of stock intelligently considered and determined.

Under the circumstances we think that the state should be nonsuited.

It is therefore ordered, adjudged, and decreed that the judgment of the court a qua be amended so as to make it one of nonsuit, and, as thus amended, be affirmed, defendants and appellees to pay costs of appeal.

NICHOLLS, C. J., concurs in part and dissents in part. For opinion, see 36 South. 123.