## GITZHOFFEN v. SISTERS OF HOLY CROSS HOSPITAL ASS'N.

No. 1780.   Decided January 26, 1907 (88 Pac. 691).

1. EVIDENCE — BEST EVIDENCE — POWERS OF CORPORATION.—In an action against a corporation conducting a hospital for injuries to plaintiff through the negligence of defendant's nurses, it was error to permit defendant to introduce evidence aliunde of the articles of incorporation for the purpose of showing that defendant was a charitable association.

2. CHARITIES — LIABILITY OF CHARITABLE INSTITUTION FOR NEGLI-GENCE OF SERVANT.—A charitable corporation is not liable for the negligent acts of its servants, unless it has been guilty of negligence in selecting them.

3. SAME — WHAT CONSTITUTES CHARITABLE CORPORATION.—The statute under which a corporation was organized required the objects of the corporation to be set out in the articles of incorporation, required the corporation, if organized for pecuniary profit, to set forth in the articles the amount of capital stock and the number of shares, with the amount of each. The articles of incorporation of a corporation formed under the statute stated that the object of the corporation was the establishment and maintenance of hos-

pitals, stated the capital stock to be a certain sum, divded into a specific number of shares, giving the value of each, and provided that the corporation should have all the rights and powers given to corporations at common law. *Held*, that the articles of incorporation and the statute showed the corporation in question to be one for pecuniary profit, and not charity.

4. HOSPITALS — LIABILITY FOR NEGLIGENCE OF SERVANTS. — Where a corporation conducting a hospital received plaintiff into the hospital for treatment under a contract for hire with the county, though the relation between plaintiff and the county was a charitable one, plaintiff was entitled to recover for injuries sustained through the negligence of the corporation's nurses.

5. SAME—EVIDENCE — SUFFICIENCY.—In an action against a hospital for injuries to plaintiff through the negligence of defendant's nurses, evidence considered, and *held* that the question of negligence was for the jury.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by Frank Gitzhoffen against the Sisters of the Holy Cross Hospital Association. From a judgment in favor of defendant, plaintiff appeals.

REVERSED, AND NEW TRIAL GRANTED.

*Kinney & Wilson* and *A. L. Hoppaugh* for appellant.

*Howat & Macmillan* for respondent.

### APPELLANT'S POINTS.

According to all of the authorities a charitable institution is liable for personal negligence in selecting or retaining its nurses or other servants if their negligence results in injury to patients. (1 Clark & Marshall on Corporations, 646.) Speaking of charitable corporation it says: "Such a corporation is liable for the negligence or wrongful acts of its physicians, nurses or other employees to the same extent as any other private corporation, if it is guilty of negligence in employing or retaining them." (*Glavin v. Rhode Island Hospital*, 12 R. I. 411, 34 Am. Rep. 675. We assert that n--

case can be found where a charitable institution has been held to be immune from its liability for the breach of a valid contract. (Harvard Law Review, vol. 9, pp. 542, 543. *Ward v. St. Vincent Hospital,* 57 N. Y. Supp. 784; *Powers v. Homeopathic Hospital,* 65 L. R. A. 372, 109 Fed. 294; *McDonald v. Hospital,* 120 Mass. 432, *Donnelly v. Catholic Assn.,* 146 Mass. 166, 15 N. E. 505; *Benton v. Hospital,* 140 Mass. 13; *Findley v. Salem,* 137 Mass. 171; *Howell v. Boston,* 122 Mass. 344; *Coe v. Washington Mills,* 151 Mass. 315, 21 N. E. 966; *Newcome v. Boston Protective Dept.,* 151 Mass. 215, 6 L. R. A. 778; *Davis v. Society,* 129 Mass. 367; *Brown v. Societe,* 138 Cal. 476, 71 Pac. 516.)

## RESPONDENT'S POINTS.

It is immaterial, as affecting the action of the court in directing a verdict for the defendant, that the court may not have given the best reason therefor; in fact it would be entirely immaterial if he had given a reason that did not justify his action. If the judgment or other act of the court is the correct judgment to render or the proper thing to do, the judgment or act is not erroneous because he may have given a wrong reason therefor. If the conclusion reached is the correct conclusion, it is of no consequence whether the reasoning by which the conclusion was reached is erroneous. (*Mining Co. v. Mining Co.,* 29 Utah 490, 594; *Kipp v. Clinger* [Minn.], 106 N. W. 108, 110; *Sullivan v. Iron Silver Mfg. Co.,* 143 U. S. 431; *Dry Goods Co. v. Malcolm,* 164 U. S. 483, 491-2; *Moffat v. Smith,* 101 Fed. 771; *Whitney v. N. Y., etc., Co.,* 102 Fed. 850.)

The fact that patients who are able to pay are liable to do so, does not deprive the corporation of its eleemosynary character so as to render it liable for injuries to patients resulting from negligence of employees, providing it exercises due care in their selection. (*McDonald v. Mass. Hospital,* 120 Mass. 432; *Girls' Ind. Home v. Fritchey,* 10 Mo. App. 344; *Railroad v. Artist,* 60 Fed. 365; *Downes v. Harper Hospital* [Mich.], 60 N. W. 42; *German, etc., Home v. Hammerbacker, supra; Powers v. Mass. Homeop. Hosp.,*

109 Fed. 294; *Atty. Gen. v. McCarthy* [Australia], 11 Vict. L. 617.)

The following cases illustrate the rule exempting charitable corporations from liability for negligence of its employees, the extent of the exemption and the reasons therefor: *Second v. Railroad*, 18 Fed. 221; *Railroad v. Artist*, 60 Fed. 365; *Powers v. Hospital*, 101 Fed. 896, 898; *Powers v. Hospital*, 109 Fed. 294, 303, 304; *McDonald v. Mass. Gen. Hospital*, 120 Mass. 432; *Boyd v. Insurance Patrol*, 113 Pa. 269, 6 At. 536; *Fire Insurance Patrol v. Boyd*, 120 Pa. 624, 15 At. 553; *Eighmy v. Railroad* [Iowa], 61 N. W. 1056, 25 L. R. A. 200; *Laubheim v. De Koininhlyke*, 107 N. Y. 228; *Laubheim v. Steamship Co.* [N. Y.], 13 N. E. 781; *Van Tassell v. Hospital*, 5 N. Y. S. 620.

Where the court feels that it would be his duty to set aside a verdict if one was rendered for the party seeking to recover it is the duty of the court to take the case from the jury and direct a verdict. (*Lacey v. Porter*, 103 Cal. 597; *Brown v. Potter* [Colo.], 58 Pac. 785; *Solomon v. Yrisarri* [N. M.], 54 Pac. 752; *Irwin v. Dole* [Kan.], 52 Pac. 916.)

STRAUP, J.

1. This action was brought to recover damages alleged to have been sustained by plaintiff through defendant's negligence while he was an inmate of its hospital. It is alleged in the complaint that the defendant is a corporation organized and existing under the laws of the state of Indiana, and was doing business in the state of Utah exclusively for profit; that the plaintiff, suffering from a purulent disease of the eyes called gonorrheal conjunctivitis, was received by the defendant at its hospital for treatment under a contract of hire, and for which the defendant was paid the sum of $41; that the plaintiff, with the knowledge and consent of the defendant, was in charge of his own physicians, who explained to the defendant and its nurses attending the plaintiff the nature of the disease and the necessity of carefully washing plaintiff's eyes every 20 minutes both night and day with an antiseptic solution prescribed and furnished by them so

as to remove every particle of accumulated pus from the eyes, and that, if the directions were not strictly followed, there was great danger of plaintiff becoming blind; that for the proper treatment of the plaintiff two nurses should have been and were agreed to be supplied by the defendant to attend him; that the defendant, in the presence of the plaintiff, promised and agreed to carry out the directions, as given by plaintiff's physicians, but negligently failed to carry out the directions and negligently placed the plaintiff in charge of but one nurse, who was incompetent and unable to care for the plaintiff; that the defendant and its nurses negligently failed and omitted to cleanse or wash plaintiff's eyes every 20 minutes, but did so only two or three times during the day, and wholly failed to do so during the nighttime; that the defendant negligently retained an incompetent and inefficient nurse to attend plaintiff, knowing her to be such, and knowing that she was neglecting and omitting to wash and cleanse plaintiff's eyes in accordance with the directions; and that in consequence of all of which the plaintiff was rendered substantially blind.

The defendant in its answer admitted and alleged that it is a corporation organized under the laws of Indiana for the purpose of establishing, maintaining, and conducting hospitals for the treatment of sick, wounded, and injured persons, with authority to do so, and that in pursuance of such authority the defendant established a hospital at Salt Lake City, Utah, for the treatment of such persons, but alleged that the hospital was conducted by the defendant solely as a charitable institution, and not for profit; that the plaintiff, an indigent person receiving support and medical attention from the county of Salt Lake "was placed in its hospital as such indigent person, and was not under any contract or agreement, except with said county; and said plaintiff remained in said hospital of this defendant for a period of 41 days, and for the board, lodging, care, treatment and nursing of the plaintiff during said 41 days said defendant was paid by said county the sum of $41," all of which was used and expended by the defendant in the support and maintenance

of the hospital, and for the care and board of its inmates, including the plaintiff. It denied all the alleged acts of negligence and alleged that the impairment of plaintiff's sight wholly resulted from the nature of the disease, and not from any fault or negligence on the part of the defendant.

The evidence on the part of the plaintiff tended to show that, about the 18th day of July, 1903, the plaintiff, suffering from a disease of the eyes, consulted a physician and obtained medicine from him which he, with the help of others, applied to his eyes for several days. He then consulted Dr. Odell, the assistant county physician, who gave him a solution to be applied to his eyes every 20 minutes. This treatment was continued by him for five or six days. Up to this time the plaintiff was Dr. Odell's private patient. Dr. Odell endeavored to obtain financial aid from plaintiff's relatives in the East, in order that the plaintiff might be properly cared for and treated; but, being unable to obtain the aid, he spoke to Dr. Mayo, the county physician, concerning plaintiff's condition. Arrangements were made by which the plaintiff was sent to the defendant's hospital. Dr. Mayo instructed Dr. Odell to take charge of and look after the case. The plaintiff was taken to the hospital in the afternoon of a Saturday, the 25th day of July, and was received by the Sister Superior, the general manager of the hospital, and who exercised a general supervision over all the nurses in attendance at the hospital, and whose duty it was to see that the nurses took proper care of the patients. The plaintiff was placed in one of the wards in charge of a nurse of the defendant. The next morning Dr. La Motte, an oculist who was summoned at the request of Dr. Odell, in the presence of the nurse and Dr. Odell, examined plaintiff's eyes, and found that plaintiff was suffering in both eyes from a disease called gonorrheal conjunctivitis in the second, or purulent, stage. At the request of Dr. Odell the oculist explained to the nurse the nature of the disease, the necessity of removing every particle of pus from the eyes every 20 minutes in order to prevent the formation of ulcers on the cornea of the eye, and that if it was not so done there was great danger of cor-

neal ulcers and perforation of the cornea, which
would cause total blindness. He showed the nurse
how to cleanse and wash the eyes with the solution left by
him, and directed that plaintiff's eyes be thoroughly washed
and cleansed with it every 20 minutes both day and night.
Dr. Odell told the nurse that the directions given by Dr. La
Motte were his directions, to which the nurse gave assent,
and agreed to carry them out. But the nurse failed to do
so, and that day gave plaintiff but five treatments at intervals
much greater than 20 minutes, and during the night follow-
ing gave him no treatments. During the forenoon of the next
day no treatments were given plaintiff, but the nurse brought
a basin containing the solution to plaintiff's bedside, and di-
rected him to to wash the eyes himself. The plaintiff replied
that he was not able to do so, and complained to the nurse
of her neglect. Upon the arrival of Drs. Odell and La
Motte, at about noon of the same day, the plaintiff also made
complaint to them. The doctors also observed, from the ac-
cumulation of pus in plaintiff's eyes and on his face, that his
eyes had not been cleansed or washed for at least two hours or
more. The Sister Superior, the general manager, was sent
for, and Dr. La Motte explained to her the nature of the dis-
ease and the necessity of cleansing the eyes every 20 minutes,
as he had done to the nurse, and informed her that the di-
rections had not been complied with. The manager inquired
whether plaintiff could not himself wash his eyes, to which
the doctors replied that he was liable to injure portions of his
eyes, and that by his attempting to wash them would do
more harm than good. The manager was also informed that
a nurse, taking care of four or five other patients in a ward,
could not properly care for plaintiff, and that an additional
nurse should be supplied, so that the treatment could be
given both day and night. To this the Sister Superior
agreed. However, only one nurse was supplied to attend the
plaintiff. The afternoon of that day (Monday) but three
treatments were given plaintiff, and none during the follow-
ing night; but four each the next two days and none during
the night time. On Thursday, when plaintiff was again

visited by Drs. Odell and La Motte, they found corneal ulcers in both eyes, the left cornea perforated, floating ulcers in the right about to perforate the cornea, from which total blindness resulted in the left eye, which was later removed, and the sight of the right eye so impaired as to amount to substantial blindness. The oculist testified that, on Sunday and Monday when he examined the eyes, the plaintiff had sight from both eyes, that there were then no corneal ulcers in either eye, and that both eyes could have been saved had the treatment been given as directed by him; but that, when he saw the eyes on Thursday, their condition was such as to be beyond all help.

The plaintiff also put in evidence the articles of incorporation of the defendant, which, among other things showed: The incorporation of the defendant under the laws of the state of Indiana; its capital stock to be $10,000, divided into 10,000 shares of $1 each; the objects of the corporation to maintain, operate, and conduct hospitals for the treatment of sick, wounded, and injured persons, and for the care of the infirm, and to maintain schools for the education and training of nurses, and to hold suitable grounds and structures to carry out the objects, with power to receive donations, devises, and bequests of real and personal property for the use and benefit of the corporation, to have all the rights, powers, and privileges given to corporations by common law, to sue and be sued, to borrow money, to secure the payment by notes and mortgages and deeds of trust of the personal and real property of the corporation, to lease, purchase, sell, and convey such real and personal property as may be necessary and proper to carry out the objects of the corporation; a plan for the conduct of the business of the corporation, providing for a board of directors, and prescribing their powers and duties; the names of the corporators, and that only professed members of the Congregation of the Sisters of the Holy Cross should be eligible to membership in the corporation; and the term of existence of the corporation, which is 50 years. Attached to the articles are by-laws, among other things, providing for the election of officers,

prescribing their duties and powers, the holding of meetings, and the amending of the articles. Attached to the articles is also a resolution of the board of directors, establishing a hospital at Salt Lake City, Utah, providing for a copy of the articles to be filed with the proper officers of this state, designating a person upon whom process may be served, and accepting the provision of the Constitution of the state "for the purpose of doing business in the state of Utah; and authorizing the president and secretary to do all things necessary in order to secure legal authority to do business in such state of Utah." A copy of the articles, together with the by-laws and the resolution, were filed with the proper officers of this state. The plaintiff also put in evidence the laws of Indiana under which the defendant was incorporated, which, among other things, provided the amount of the capital stock of the corporation to be set out in its articles, if organized for pecuniary profit, and the number of shares, if any, into which the same should be divided, with the amount of each share, which shall not exceed $100; the object of the association with a proposed plan of doing business fully set out; the term of the existence of the corporation, which, if organized for pecuniary profit, should not exceed 50 years; the purposes for which a corporation may be organized, among them enumerating the purposes set forth in the articles of the defendant, giving the association all the rights, powers, and privileges given to corporations by common law, to sue and be sued, to borrow money, give mortgages and deeds of trust, hold, lease, purchase, sell, and convey such real and personal property as may be necessary to carry out the objects and purposes of the corporation.

The defendant introduced evidence tending to show that the plaintiff was in charge of Dr. Mayo, the county physician; that he saw the plaintiff the day after he was brought to the hospital, and the cornea of plaintiff's eyes were then ulcerated and perforated, and no treatment would have done him any good; that he directed the nurse in charge of plaintiff to merely apply bandages and cold water to plaintiff's eyes to relieve pain; that Dr. La Motte did not see plaintiff

until Thursday; and, without setting forth the evidence in detail, let it suffice to say that it tends to show that plaintiff's eyes at the time he entered the hospital were in such condition as to be beyond medical aid, that the hospital and its nurses were justified in following the directions of Dr. Mayo, and that plaintiff's blindness is not due to any negligence on the part of the hospital or any of its nurses, but is wholly due to the nature of the disease from which he was suffering. Over the objection of plaintiff, the defendant was permitted to introduce parol testimony of the president of the association and other Sisters of the Holy Cross hospital, tending to show that the defendant is a charitable institution, and that all the income and revenue derived from the association is disbursed in support of the hospital and in caring for its inmates, and that no part thereof is disbursed or paid to the members of the association by way of dividends or otherwise; nor is any salary or compensation of any kind paid to the members of the corporation or to the Sisters in charge of or connected with the hospital; nor is any member of the corporation permitted to own any property as individuals, and that all property owned, possessed or acquired by them becomes the property of the association. The case was tried before a court and jury. At the conclusion of all the evidence, the court, at the request of the defendant, took the case from the jury, and directed a verdict in favor of the defendant. From the judgment entered upon the verdict, the plaintiff appeals.

2. The appellant contends: (1) That the object and purpose of the association are to be determined alone from its articles of incorporation, and that the court erred in admitting in evidence the parol testimony referred to; that the articles themselves show the defendant to be a corporation for pecuniary profit and noncharitable, and the defendant is liable for the negligent acts of its nurses done in the course of their employment in caring for and treating the plaintiff. And (2) though the defendant be a charitable institution, it having received the plaintiff under an express contract of hire, and having thereunder assumed and undertaken to treat

plaintiff for pay, it still must be held liable for such negligence of its nurses. On the contrary, it is asserted by the respondent that the articles do not disclose whether the character of the defendant is charitable or noncharitable, and that therefore parol evidence was admissible to show its real character, and, being a charitable institution, the defendant can only be made liable for its negligence in selecting and retaining an incompetent or negligent nurse, of which there is no evidence; that no contract was entered into between plaintiff and the defendant; that the plaintiff was not received under any such contract of hire, but that he, being an indigent person, on the charge of the county, was placed in the hospital for care and treatment by the county, for which the defendant was paid by the county; that plaintiff's condition was wholly due to the disease so far progressed at the time of his admission to the hospital as to render all aid unavailing; and that his condition is not due to any fault or negligence on the part of the defendant or its nurses.

Assuming, as is the great weight of authority, that charitable institutions or corporations are not liable for the negligent acts of its nurses or other employees, if it has not been guilty of negligence in selecting them (*Powers v. Mass. Homeopathic Hospital,* 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372, and *Brown v. La Societe Francaise,* 138 Cal. 475, 71 Pac. 516, where the matter is discussed and reference made to the cases), it is important to ascertain the character of the defendant, and by what kind of evidence its character may be shown. The law under which the defendant was organized required that the objects of the corporation should be fully set out in the articles of incorporation. This was done by the defendant. Had it not stated the purpose for which the statute authorizes a corporation to be formed, the defendant would not be legally incorporated. The law further required that, if the corporation is organized for pecuniary profit, it must set forth in its articles the amount of the capital stock and the number of shares into which the same is to be divided, with the amount of each share, which shall not exceed $100. This the defendant did by stating

its capital stock to be $10,000, divided into 10,000 shares of $1 each. The principal features of charitable corporations are "that they have no capital stock, and that their members can derive no profit from them." (6 Cyc. 974; *McDonald v. Mass. Gen. Hospital,* 120 Mass. 432, 21 Am. Rep. 529.)

The law also required the term of existence of the corporation to be stated, which, if organized for pecuniary profit, shall not exceed 50 years. The articles as filed by the defendant gave it all the rights, powers, and privileges given to corporations by common law, to sue and be sued, to hold, acquire, purchase, and sell such personal and real property as may be necessary to carry out the objects of the corporation, and to borrow money, to mortgage and incumber the real and personal property of the corporation to secure the same. Indeed, the corporation, by its articles, and by the law under which it was organized, is given all the rights, powers, and privileges that are usually, or that can be, given to a business corporation. Thereunder dividends could be declared and paid to the stockholders the same as any business corporation might do, and the members permitted to derive whatever profit there might be in the business, the same as members of any business corporation. The articles are in harmony with those of a business corporation, and wholly inconsistent with those of a charitable organization. The fact that the corporation was formed for the purpose of maintaining and conducting hospitals for the treatment of the sick, wounded, and injured persons, and for the care of the infirm, is not controlling, for such things may be done for profit as well as for charity. The articles upon their face purport to create an organization for pecuniary profit. It has been quite generally held that the nature of the corporation must be determined from its articles of association, and that its character cannot be changed or modified by parol evidence; that the object and purpose for which a corporation is organized must be gathered alone from the written instrument, and it cannot be aided or varied or contradicted by testimony or averments *aliunde* the instrument itself.

(*Craig v. Benedictine Sisters Hosp. Ass'n,* 88 Minn. 535, 93 N. W. 669; *Gould v. Fuller,* 79 Minn. 414, 82 N. W. 673; *Peo. ex rel. Bd. Charities v. N. Y. Soc. P. C. C.,* 161 N. Y. 233, 55 N. E. 1063; *Atty. Gen v. Lorman,* 59 Mich. 157, 26 N. W. 311, 60 Am. Rep. 287; *Detroit Driving Club v. Fitzgerald,* 109 Mich. 670, 67 N. W. 899; *City of Kalamazoo v. Power Co.,* 124 Mich. 74, 82 N. W. 811; *State v. New Orleans Water Supply Co.* [La.], 36 South. 117; 1 Clark & Marsh. on Corporations, section 36h; 3 Ency. Ev. p. 615.)

In the first case cited, where the corporation upon the face of its articles appeared to be a mere business corporation for pecuniary profit, evidence *aliunde* the articles, for the purpose of showing that the corporation was in fact a charitable association, was held incompetent and inadmissible. To some extent at least, the same doctrine has been announced by this court in the case of *North Point C. I. Co. v. Utah & S. L. C. Co.,* 16 Utah 246, 52 Pac. 168, 40 L. R. A. 851, 57 Am. St. Rep. 607. We are not concerned with the question whether a stranger to a corporation may show the real character of the association by evidence *aliunde* the articles. The only question in this respect before us and decided by us is that a corporation itself may not do so. We are therefore of the opinion that the court erred in admitting the testimony referred to. Looking at the articles themselves, we are also of the opinion that the purpose of the association, as therein disclosed, is for pecuniary profit, and not charity.

This then brings us to the question as to the sufficiency of the evidence to show a liability against the defendant, a corporation organized for profit, to require a submission of the case to the jury. To such a corporation the doctrine of *respondeat superior* fully applies, and the corporation is made liable for the negligent acts of its employees done in the discharge of its business and within the scope of the servants' employment. This principle of law, of course, is elementary, and readily conceded by counsel for respondent. It, however, in effect is urged that, notwithstanding the general

character of the defendant as to its being a corporation for gain, nevertheless the actual relation existing between it and the plaintiff was merely charitable, and hence the principle of law should be applied to the case as is applied to charitable institutions, only making it liable for its negligence in the selection of the nurse. This position is taken from the assumed facts that the plaintiff was an indigent person, a charge upon the county, and as such was placed by it in the hospital for treatment for which payment was made by the county, the plaintiff paying nothing, and not agreeing to pay anything; and, as stated by counsel for the respondent in his brief: "There was no contract between plaintiff and the defendant. The contract for his admission to the hospital was between the county, whose charge he was, and the defendant. Under the contract between the county and the defendant, plaintiff, having been sent there, had a right to be in the hospital and to be treated as a patient." If one, through mere kindness or charity, admits a sick or wounded person to his house to administer aid and comfort to him, and for such purpose selects a physician or servant to attend him, undoubtedly he ought not be held, nor does the law hold him, liable for the negligence of the physician or servant, unless, as the authorities say, he has been guilty of negligence in the selection of the physician or servant. And, had the defendant so received the plaintiff, and not otherwise, it could not be held liable in any greater degree. But, if one receives another into his house for the purpose of treating him, and assumes and undertakes to do so, though it may be done gratuitously, there is some force to the position that he should be held liable for the negligence of his servant in the discharge of the duties undertaken and assumed by him, upon the principle of law that, if a person actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, whether done by himself or through his servants. Applying the principle, there is force to the argument that the defendant, having received the plaintiff into its hospital, and having assumed and undertaken to treat

him, it thereby assumed the duty of using reasonable care in so doing. But we need not, and do not, rest the determination of the case upon this principle. It was alleged in the complaint that the defendant received the plaintiff into its hospital for hire. The defendant in its answer, while denying that it received the plaintiff under any direct contract or agreement with him, yet admits that it received him for treatment under a contract with the county for which it was paid by the county. The admission has the effect of precluding the defendant from making the claim that the plaintiff was received and treated by it through mere charity, for we cannot well see how the defendant can admit that it received the plaintiff for treatment under contract with the county for hire, and then claim that it received the plaintiff gratuitously No claim is made that the payment received by it was not made or received as compensation, but only as a donation or contribution to the defendant determined by the ability of the patient or the county to give, and not upon the value or cost of services rendered. The allegations of the answer are direct that the defendant received the plaintiff under contract with the county, and that for his board, treatment, nursing, etc., it was paid the sum of $41.

If the defendant agreed with the county to receive the plaintiff for treatment for a price which the county was willing to pay, and the defendant to accept, we cannot see what difference it makes that the relation between the county and the plaintiff was charitable, any more than if an individual through mere kindness towards the plaintiff had contracted with the defendant for his treatment and care. While, therefore, the relation between the plaintiff and the county may be said to have been merely charitable, the relation between the defendant and the plaintiff nevertheless was not so. That a contract may be entered into between two persons for the use and benefit of a third person, and that such third person may maintain an action thereon, although the promise or contract was made without his knowledge and without any consideration moving from him, is well settled in this jurisdiction. While it may be said that this is an action of tort,

and not on contract, nevertheless, in such action, a plaintiff seeking to recover for injuries sustained by him through the negligence of another must show that the latter committed a breach of some duty owing to the plaintiff or imposed for his benefit. To show what that duty was, it was proper to aver and prove the relation existing between the parties. As tending to show a duty owing from the defendant to the plaintiff, it was proper to aver and prove that the defendant had received him under contract for a consideration, and as tending to show what it was that the defendant had assumed and undertaken to do. For, it may well be said that, if the defendant had received the plaintiff as a mere object of charity, then it owed him no duty, except perhaps the exercise of care in the selecting of a physican or nurse, if it had undertaken to do so. If, on the other hand, it received him for treatment under a contract for pay, and undertook and assumed to treat him, then it owed a duty not only to exercise reasonable care in the selection of a nurse, if it had undertaken that duty, but also the duty to use reasonable care in the giving of the treatment and the doing of that which it had agreed and assumed to do. If the defendant agreed with the county to receive and treat the plaintiff for pay, we cannot see on what principle it did not owe him the same duty in the premises as if it had directly made the agreement with the plaintiff to receive and treat him for pay.

Neither by the pleadings nor the evidence is there presented a case of rendering services out of mere charity, but one of rendering services for pay by the defendant, a non-charitable corporation, and hence it must be held liable for the negligent acts of its servants done in the scope of their employment. Upon the alleged acts of negligence, we think the evidence was sufficient to require the case to be submitted to the jury for their finding. As to the condition of the plaintiff's eyes at the time of his admission to the hospital, the yielding of the disease to treatment, the physician in charge of the plaintiff, the directions given by the physicians to the defendant and its nurses with respect to the treatment, and as to what transpired at the hospital, the evidence is

conflicting. The case ought to have been submitted to the jury, and the court erred in not doing so.

The judgment of the court below is therefore reversed, and a new trial granted, with costs to appellant.

McCARTY, C. J., and FRICK, J., concur.