SESSIONS v. THOMAS DEE MEMORIAL HOSPITAL ASS'N.

No. 5665. Decided October 21, 1935. (51 P. [2d] 229).

Rehearing Denied October 14, 1936.

*Royal J. Douglas,* of Ogden, for appellant.

*DeVine, Howell & Stine* and *A. W. Agee,* all of Ogden, for respondent.

MOFFAT, Justice.

This is an action for the wrongful death of Joseph Sessions, a son of the plaintiff, about six years of age. The action is filed pursuant to the authority given by R. S. Utah 1933, 104-3-10. The complaint in substance alleges that on or about the 29th day of March, 1935, the plaintiff and his wife took their minor son to the defendant hospital as a patient for an appendectomy. The boy was taken to the hospital at the direction of the patient's physician, who was a member of the hospital staff. The defendant hospital received the patient, it is alleged, for "pay and compensation," and undertook to furnish the patient board and lodging, operating room, medicines, and competent nurses to care for him and do all things necessary and incidental to the performance of a surgical operation, and furnish care after the operation. The operation was performed, and was successful. Good health, mental and physical vigor of the patient, except for the appendix ailment, are alleged; also his ability to render aid, assistance, society, and comfort to plaintiff.

It is also alleged that the defendant is a hospital corporation organized and existing under and by virtue of the laws of the state of Utah, and that under the articles of incorporation defendant is engaged in maintaining, operating,

and conducting a general hospital business for "pay and compensation," for the care, treatment, maintenance, and comfort of sick, injured, diseased, and infirm persons, and to care for those who were to be operated and those who had been operated.

It is charged the defendant received "pay and compensation" for receiving patients, and was authorized to sue and be sued; that it had no corporate stock and did not pay dividends or profits, that its profits, if any, were used to enlarge and carry on hospital work; that while Joseph Sessions, a minor, was at defendant hospital, the attending physician ordered that the patient be given an injection consisting of $\frac{1}{4}$ grain of codeine. That it was the duty of the nurses at the defendant hospital to administer the drug, and the supervisor of the nurses of the hospital to have control of all drugs in the hospital, including codeine and morphine, and also the duty of the supervisor of nurses to issue all drugs to be administered to patients. That the supervisor of nurses and the nurse who had charge of the patient, Joseph Sessions, were both at that time employees of the defendant hospital. It is further alleged that the supervisor of nurses had complete charge and custody of the medicine room and drugs, and the key to the medicine room; that it was the duty of the supervisor to issue drugs to the nurse and particularly the duty of the supervisor to issue to the nurse directly in charge of Joseph Sessions the codeine as ordered by the attending physician; that the supervisor of nurses negligently and carelessly permitted the attending nurse, who was then a student in training, to take the keys to the medicine room to take and prepare the prescribed codeine, and that said student nurse carelessly and negligently prepared and administered a certain poisonous narcotic drug known as morphine, and administered the same by injection to the patient instead of the prescribed codeine, and that the patient died from the effects of the morphine so administered. It is also alleged that the defendant hospital, its servants and employees failed to ex-

ercise reasonable or ordinary skill, prudence, or care, and because of such neglect and carelessness, while the employees were acting within the scope of their employment, the morphine was administered, causing the death of the patient.

To the complaint the defendant demurred generally and specially. The special demurrer was overruled. The general demurrer attacking the complaint for want of sufficient facts to constitute a cause of action was sustained. There is no question before us relating to the special demurrer. The plaintiff elected to stand upon the complaint and refused to further plead. The cause was dismissed, and judgment accordingly entered. Plaintiff appeals.

The appellant has made assignments of error. All these go to the question as to whether the court erred in sustaining the general demurrer. The grounds and reasons urged in support of the position and ruling of the trial court by defendant and respondent are that the defendant is an eleemosynary or charitable institution, and that such institutions are not liable for the negligence of itself or its servants, agents, and employees, except negligence in the selection of its servants, agents, and employees, to wit, its nurses, and, secondly, it is further argued by defendant that it is incumbent upon plaintiff to plead in his complaint that the defendant is not a charitable or eleemosynary institution. Appellant controverts both situations and maintains the sufficiency of the complaint as being good against both attacks. We shall dispose of the second proposition first. The complaint alleged:

"That defendant Thomas D. Dee Memorial Hospital Association is a hospital corporation, organized and existing under and by virtue of the laws of the State of Utah, and as such, during all the time herein mentioned was engaged in maintaining, operating, and conducting a general hospital business for pay for the care, treatment, maintenance and comfort of the sick, injured, diseased, infirm persons, those who were to be operated and those who were operated, and said defendant hospital received minor children as well as adults for hospitalization.

That said defendant charged and received compensation for nursing and treating patients. That it was authorized to sue and be sued."

R. S. Utah 1933, 104-13-15, provides:

"A plaintiff suing as a corporation, * * * or in any other way implying corporate * * * capacity, need not state the facts constituting such capacity, or relation, but may aver the same generally, or as a legal conclusion, and where a defendant is sued in such capacity or relation, a plaintiff may aver such capacity or relation in the same general way."

"The authorities agree that the general allegation that the plaintiff or the defendant, as the case may be, is a corporation, organized and existing under the laws of some named state, is sufficient." 7 R. C. L. § 703.

It would not appear to be necessary to plead the nature of a corporation in order to state a cause of action. A corporation is bound as to its purposes by the statements in its articles of incorporation. Whether the articles of incorporation upon their face purport to create an ■ organization for charity or for pecuniary profit may be determined in so far as the corporation is concerned from the articles themselves, and may not be changed or modified by parol evidence; but whether a stranger may show the real character of the association by evidence aliunde the articles is an open question in this state (*Gitzhoffen* v. *Sisters of Holy Cross Hospital Ass'n*, 32 Utah 46, 88 P. 691, 695, 8 L. R. A. (N. S.) 161), and one on which there may be diversity of opinion. Incidentally, this latter will be involved in the further discussion of the principal question. For a complaint to be good against a general demurrer, we think a plaintiff is not required to plead, in so far as corporate existence is concerned, the nature or purposes of the corporate defendant.

The question which the parties have assumed or conceded to be raised by the general demurrer which in argument and submission we have been asked to decide is: Assuming it to

be the law that an eleemosynary or charitable institution is not liable for the negligence of its agents, servants, or employees except for negligence in the selection of its agents, servants, or employees, does the institution lose its eleemosynary character, and is the institution liable for negligence of its servants if it receives pay for the service rendered? The courts of this country have generally held that hospitals organized for charitable purposes are not liable to their patients for injuries from the negligence of their employees, when reasonable care is used in the selection and retention of an employee. *Gitzhoffen* v. *Sisters of Holy Cross Hospital Ass'n,* supra.

Different reasons for support of the rule are given by different courts—some put the rule upon the basis of a public policy, others, especially endowment institutions, support the rule upon the theory that a trust fund for charitable purposes should not be depleted by subjecting the endowed institution to loss of the fund because of negligence, and, lastly, others support the rule upon the doctrine of an implied waiver, that is, one who accepts a charity may not turn and rend his benefactor. It is not necessary either to cite or distinguish the cases that support the general rule or the cases that select one or more of the arguments advanced in support thereof. This case coming here on demurrer, the facts that may ultimately be determinative of the type of institution are not before us. The allegations of the complaint are the facts for the purposes of the demurrer. Even conceding the general rule to be as stated, the more or less conflicting decisions present a wilderness of argument with no definite line of authority suggesting a harmony or solution. There are jurisdictions in which the freedom from liability is what may be termed absolute where the institution takes on the characteristics of a charitable institution as generally understood, but nevertheless, whenever possible, exacts pay for the service rendered, it being held that the fact the some patients who are able to pay are required to do so does not deprive the in-

stitution of its charitable or eleemosynary character so as to deprive it of immunity from liability. While not pretending to be more than illustrative, the following cases submitted by respondent, among others, when the institution is found to be a charitable institution, support the position: *Jensen* v. *Maine Eye & Ear Infirmary*, 107 Me. 408, 78 A. 898, 33 L. R. A. (N. S.) 141; *Roosen* v. *Peter Bent Brigham Hospital*, 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563; *Downes* v. *Harper Hospital*, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; *Williamson* v. *Louisville Industrial School of Reform*, 95 Ky. 251, 24 S. W. 1065, 23 L. R. A. 200, 44 Am. St. Rep. 243; *Fire Ins. Patrol* v. *Boyd*, 120 Pa. 624, 15 A. 553, 1 L. R. A. 417, 6 Am. St. Rep. 745; *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432, 21 Am. Rep. 529. The case of *Adams* v. *University Hospital*, 122 Mo. App. 675, 99 S. W. 453, extends the immunity further than any other case we have had the privilege of consulting. The court then said: "In our opinion, the defendant is neither liable for the negligence of one of its employees, nor for its own negligence in selecting an incompetent employee, it can make no difference which of the two acts caused the injury." Once it is established, the institution, society, association, or corporation is charitable, and so, pursuing its purpose, the law of immunity seems to be settled. The question here submitted is: Does the contract for "pay" take the institution out of the protection of the rule, or, in so far as the contract for pay is concerned, make the institution a business institution not subject to the charitable immunity. The question as thus stated is too narrow for complete answer, as will later herein appear. Whether or not that character attaches, it seems to us, is a matter of proof under all the circumstances of the case.

There are cases holding the charitable institution liable upon its contract relation where payment is made for the service, notwithstanding the charitable character of the institution. The following cases submitted by appellant support, or tend to support, appellant's position: *Tucker* v. *Mo-*

*bile Infirmary Ass'n,* 191 Ala. 572, 68 So. 4, L. R. A. 1915D, 1167; *Bruce* v. *Central Methodist Episcopal Church,* 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, 11 Ann. Cas. 150; *Mulliner* v. *Evangelischer Diakonniessenverein,* 144 Minn. 392, 175 N. W. 699; *City of Shawnee* v. *Roush,* 101 Okl. 60, 223 P. 354. This latter case quotes from and approves the law as laid down in the case of *Tucker* v. *Mobile Infirmary Ass'n,* supra, wherein it is said:

"A paying patient in a hospital conducted without stock or profit, in which indigent patients are treated without cost and the fees exacted from patients who can pay are used in promoting the work, may recover damages for injury done him through the negligence of an attending nurse."

The authorities are reviewed and interpreted. A division and diversity of opinion is recognized. It will be proper and sufficient to pass upon such questions when evidence is available to apply the law as we find it in a proper case. As stated in 21 R. C. L. § 39, p. 395:

"A question of difficulty is met in the form of determining the liability of hospitals for the negligence or lack of skill of its attendants and physicians. It seems that the relation of principal and agent often exists between a hospital and its employees. So it is generally held that persons and hospitals that treat patients for hire, with the expectation and hope of securing therefrom gain and profit, are liable for negligence and malpractice on the part of physicians or nurses employed by them. And this is true even though the nurse employed by the hospital is acting under the general directions of a physician employed by the patient. On the other hand it is generally held that hospitals conducted for charity are not responsible for the negligence or malpractice of their physicians or attendants."

There are other cases where the character of the institution is a question for determination. When the character of the institution has been, from the evidence or from the pleadings if they are sufficient, determined to be charitable, then the rule of exemption from liability for tort of its servants and from taxes is generally applied. There are situations and cases where the character

of the institution is one of the issues to be determined. That an institution is denominated a "hospital," a "sanitarium," an "orphans' home," a "memorial institution or association," does not, when the character of the institution is drawn in question sufficiently to indicate its charitable character as to dispense with answer and the necessity of proof of its character and operations. When questioned, the status of the institution, whether charitable or otherwise, is an issue to be determined from the pleadings and proof as other issues.

The fact that an association is organized with or without capital stock is a matter of proof, and as such may weigh for or against its claimed charitable character. So may the matter of whether the institution exacts payment for all patients, or only a part of them, or none of them. So may the manner and amount of profits or accumulations, if any, and the purposes and manner of distribution or use thereof, whether the institution may be privately owned and the nature of that ownership and use, the activity engaged in— all are matters of evidence. The use or service to which the institution devotes its property, and the ultimate ends to be attained, may be important for consideration. Thus, certain of the properties of an organization generally recognized as charitable may be devoted to the production of income or profit the same as a private corporation organized for profit. Such property may not be exempted from taxation because the purpose of the association or society is that of a charitable institution. What the evidence establishes characterizes the institution. Its character is for determination from the evidence by the court or by the jury under proper instruction by the court. The underlying principles exempting a charitable institution from negligent liability are in the last analysis similar to those exempting such institutions from taxation. Other reasons are often given, but public policy lays the foundation.

In the case of *Parker* v. *Quinn*, 23 Utah 332, 64 P. 961, it was held that premises, consisting of a two-story brick build-

ing, the upper story of which had been used by a Ward Relief Society in the furtherance of its charitable purposes were exempted from taxation, while the lower floor was rented for business purposes from which rent was received, was not exempt, taxes being prorated on the bases of value, although it was contended the proceeds from rents were used exclusively for charitable purposes.

In the case of *Salt Lake Lodge of Elks* v. *Groesbeck,* 40 Utah, 1, 120 P. 192, Ann. Cas. 1914C, 940, the doctrine of the case of *Parker* v. *Quinn,* supra, was approved, but by a divided court, the proceeds from a buffet and dining room being devoted to a charitable purpose were held not to remove the association from the charitable classification.

In the case of *Odd Fellows' Bldg. Ass'n* v. *Naylor,* 53 Utah 111, 177 P. 214, the situation was analogous to the case of *Parker* v. *Quinn,* supra.

Exemption from taxation is a privilege to be claimed and established as a matter of defense when the taxing authority by proper procedure levies the tax. Taxing authorities levy the tax, and are not first required to negative the charitable or eleemosynary character of the institution, society, or corporation. It would seem to be just as sound in principle to say that when one is charged with responsibility for wrongful or tortious behavior and liability therefor, and exemption therefor is claimed it is essentially defensive matter.

As was said in the case of *Gitzhoffen* v. *Sisters of Holy Cross Hospital Ass'n,* supra:

"The fact that the corporation was formed for the purpose of maintaining and conducting hospitals for the treatment of the sick, wounded, and injured persons, and for the care of the infirm, is not controlling, for such things may be done for profit as well as for charity."

Sometimes the articles of incorporation may sufficiently disclose the fact that the association is one for pecuniary

profit, and not for charity; sometimes the articles of association may disclose that the purpose is solely for charity as in the *Parker* v. *Quinn Case,* supra, yet be engaged in profit taking in some of its activities. And even in cases where the articles of association may characterize the institution or society, as one for profit, yet, if through mere kindness or charity, a sick or wounded person should be admitted and be furnished aid and comfort and for the purpose of administering treatment a physician or servant is selected to attend the patient, the person or association so securing aid ought not to be held, nor does the law hold such a "Good Samaritan," liable for the negligence of the physician or servant, unless, as the weight of authority declares, he has been guilty of negligence in the selection of the physician or servant; conversely, if the association, though generally denominated charitable, had received the sick, disabled, wounded, or infirm for treatment under a contract for pay, and undertook and assumed to treat him, "then it owed a duty not only to exercise reasonable care in the selection of a nurse, if it had undertaken that duty, but also the duty to use reasonable care in giving treatment and in doing that which it had agreed and assumed to do," and to establish immunity it should be shown by the institution that it is entitled to immunity or exemption by presenting its defense accordingly. *Southern Methodist Hospital & Sanatorium of Tucson* v. *Wilson* (Ariz.) 46 P. (2d) 118, 126.

The matter is well stated by Lockwood, J., in the case just cited:

"Generally speaking, the nature of the institution, if a corporation, and its purposes and objects are primarily determined by its charter or articles of association, *In re Loeb's Estate,* 167 App. Div. 588, 152 N. Y. S. 879; *Gitzhoffen* v. *Sisters of Holy Cross Hospital Ass'n,* supra; and ordinarily extrinsic evidence is not admissible to establish that purpose. *Powers* v. *Massachusetts Hospital* [(C. C. A.) 109 F. 294, 65 L. R. A. 372], supra; *Union Pac. R. Co.* v. *Artist* [(C. C. A.) 60 F. 365, 23 L. R. A. 581], supra. When, however, it is contended

that although the articles of incorporation show the institution to be a charitable one, it is not carrying out the purposes of those articles, parol evidence is admissible to contradict the prima facie case made by the articles themselves. We hold, therefore, that the articles of incorporation of defendant are prima facie evidence of its character as a charitable institution, but that such evidence may be rebutted by a showing on behalf of plaintiff that it has not lived up to the principles set forth in such articles, for its responsibility is fixed, not by its intended purpose, but by what it was actually doing at the time of the alleged injury."

The cases are collected and discussed in the Arizona case, and those desiring to examine therein further are referred to that recent case.

This court, in passing upon the question of exemption or nonexemption from taxation of an institution claiming exemption because charitable in the case of *William Budge Memorial Hospital* v. *Maughan, County Treas.*, 79 Utah 516, 3 P. (2d) 258, 263, 13 P. (2d) 1119, said:

"We are unable to find a single distinctive charitable feature that marks the plaintiff's hospital as a charitable institution."

And then quotes from *Congregational Sunday School & Publishing Soc.* v. *Board of Review*, 290 Ill. 108, 125 N. E. 7, 10; 11 C. J. 303:

"A charity is a gift to the general public use which extends to the rich as well as to the poor. The test of a charity and the test of a charitable organization are in law the same. The principal and distinctive features of a charitable organization are that it has no capital stock and no provision for making dividends or profits, but derives its funds mainly from public and private charity, and holds them in trust for the objects and purposes expressed in its charter."

And then the court adds:

"The mere fact that the profits derived from conducting the hospital were used for its enlargement rather than disbursed to the stockholders in dividends did not change the character of the use to which the property of plaintiff corporation was put."

The nature of the holding, the manner of operation, the purposes and uses of any accumulations are matters for consideration. It is pertinently said in the *William Budge Memorial Hospital* v. *Maughan* Case, supra, that

"The management which dictated such a policy, in the course of years, when the plant had increased in value to considerable proportions, largely because it was not burdened by the payment of taxes, might be able to dictate a dissolution of the corporation, to the immense profit of all the stockholders."

Other claimed exemptions from liability might directly tend to make the accumulations more substantial. The profits of one institution may be used in furthering the interest of another or of the persons associated with or in the management thereof.

The evidence of the manner in which it is conducted and the purposes aimed to be accomplished may show that it is a charitable institution and entitled to immunity or may not.

Alleging a cause of action is one matter, proving it is another, and establishing it against opposition, and overcoming meritorious defenses, still another.

In the instant case, plaintiff alleges his own right and capacity to sue, the corporate existence of the defendant, the receiving of the patient, the agreement of payment for the service, the negligent acts, the consequent injury or damage. We think the complaint states a cause of action, good against a general demurrer.

The judgment of the trial court is reversed, the cause is remanded, with the directions to reinstate the cause, overrule defendant's demurrer, and permit the parties to further proceed in the cause. Appellant to recover costs.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, J., concur.

FOLLAND, Justice (concurring).

I concur in a reversal of the judgment of dismissal on the ground the complaint is good as against a general demurrer.

The complaint merely alleges the corporate existence of the defendant, that it is authorized to sue and be sued, that it is operating and conducting a general hospital business for pay, that it charges and receives compensation for treating patients, and that it received and undertook to treat for compensation the deceased, for whose death, suit is brought. There are no facts alleged from which it appears either directly or by inference that defendant is an eleemosynary or charitable institution. The mere use of the word memorial in its name, as urged by defendant in brief and argument, is not sufficient to raise an inference that the corporation is charitable in character. Hospital institutions of a strictly private character conducted for gain and profit and performing no charity are liable to patients for the negligence of their servants. 13 R. C. L. 945; *Gitzhoffen* v. *Sisters of Holy Cross Hospital Ass'n,* 32 Utah 46, 88 P. 691, 8 L. R. A. (N. S.) 161. There are no allegations in the complaint which place the defendant in any other class. If defendant seeks to avail itself of the rule, supported by authority and strong reasons [*Southern Methodist Hospital & Sanatorium* v. *Wilson* (Ariz.) 46 P. (2d) 118], that hospital institutions of an eleemosynary or charitable character are not liable for the negligence of their servants, agents, and employees, except negligence in the selection of their servants, agents and employees, it must set up such facts in defense as bring it within the rule. Until this is done, we are not required to decide whether the rule of nonliability is the law in this state, or, if it be the law, that defendant corporation is such an institution as can escape liability for negligence behind such cloak of immunity.

I do not concur in any other part of the opinion, as I think the matters discussed are not before us for decision or comment.

WOLFE, Justice (concurring in part, dissenting in part).

I concur in the result reached that the demurrer should have been overruled and not sustained, for the reason that

it is not necessary for the plaintiff to plead that the Dee Memorial Hospital was not an eleemosynary institution; nor does the name of the hospital, Thomas Dee Memorial Hospital Association, necessarily imply that it was an eleemosynary institution. It might have a name which would imply that and yet be run for profit. Its articles of incorporation might constitute it as an eleemosynary institution, and yet it might be run for profit. As suggested in the prevailing opinion, that is a question of fact. However, the prevailing opinion simply hints at the law applicable to the real question in the case, that is, whether, if the defendant is a charitable institution, it would be liable for the alleged negligence of the nurse who gave the wrong sedative. I think in this case we should lay down definitely what the rule should be in this state. The great probabilities in this case are that the principle of law we lay down as to whether or not eleemosynary institutions are exempt from liability for the negligence of their servants, other than negligence in choosing them, will control this case. Not to decide it at this time will mean a trial and. a record and perhaps an appeal in order just to determine that question; whereas, the probabilities are that if the question is now determined, that will end the lawsuit. I think under circumstances such as these, where both sides expressed the request in open court that we decide that question, we should do so. I would not say that under ordinary circumstances that should be done, but where the single question will save time, money, and effort, and in all probability will again have to be presented after the expenditure of such time, money, and effort, we should decide it beforehand rather than afterwards. For that reason, I dissent in reversing the lower court without deciding the question above stated.