## WHITE v. CENTRAL DISPENSARY AND EMERGENCY HOSPITAL.

### No. 6961.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1938.

Cornelius H. Doherty and Robert L. Jefferys, both of Washington, D. C., for appellant.

Benjamin S. Minor, Arthur P. Drury and John M. Lynham, all of Washington, D. C., for appellee Central Dispensary and Emergency Hospital.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia sustaining a demurrer to a declaration. The plaintiff, the appellant here—and hereafter referred to as

the appellant—declined to plead further. The District Court thereupon entered judgment for the defendant Central Dispensary and Emergency Hospital, the appellee here—and hereafter referred to as the appellee.[1] The declaration was in the following terms:

"The plaintiff, Arthur B. White, by and through his attorneys, Cornelius H. Doherty and Robert L. Jefferys, sues the defendants, Central Dispensary and Emergency Hospital, a corporation doing business in the District of Columbia, and Dr. Francis Threadgill, a physician at the Central Dispensary and Emergency Hospital, for that heretofore, to wit, on the 28th day of February, 1936, the plaintiff was struck by an automobile while crossing Eleventh Street between R and S Streets, Northwest, and was knocked unconscious by the said blow; that the said plaintiff was taken to the Central Dispensary and Emergency Hospital and was examined by the defendant Dr. Francis Threadgill, and plaintiff says that the defendants, and each of them, severally held themselves out as capable of making a proper diagnosis and treatment of any and all physical disabilities arising from any cause, and invited the public, including the plaintiff, to use their service at a remuneration to be charged by defendants, and the said defendants undertook to render proper medical care and assistance to plaintiff, and it then and there became and was the duty of the defendants, and each of them, to exercise reasonable care to see that the said plaintiff obtained proper medical examination and attention, but plaintiff says that, notwithstanding their duty in the premises, the said defendants, and each of them, improperly diagnosed the injuries sustained by the said plaintiff and caused the plaintiff to be taken to a Metropolitan Police Station and charged with intoxication and required to remain in a cell for a long period of time, and that thereafter plaintiff was again brought to the said Central Dispensary and Emergency Hospital where the said Dr. Francis Threadgill, acting on behalf of himself and the said co-defendant, Central Dispensary and Emergency Hospital, refused to admit the said plaintiff to the Hospital and said: 'I treated this man once before tonight. There is nothing wrong with him. I advise you to take him home.'; that thereafter plaintiff was taken to the office of a physician in the District of Columbia who diagnosed plaintiff's injury as a broken wrist, ruptured kidney, both kneecaps dislocated and lacerations of the head, and plaintiff was then taken to Gallinger Municipal Hospital where the diagnosis of the physician was substantiated, and plaintiff remained in the Hospital until the 22nd day of August, 1936; the plaintiff says that by reason of the failure of the defendants to properly diagnose his injuries, after they had undertaken to do so, plaintiff was caused to become paralyzed and to suffer for a long period of time and was required to stay away from his employment from the 28th day of February, 1936, until the first day of October, 1936, and plaintiff's nervous system was severely shocked and permanently injured and his functioning impaired and was greatly damaged by reason of his arrest and detention by the police, which was occasioned by the negligent failure of the defendants to properly diagnose his injuries, and plaintiff suffered and will continue to suffer great physical and mental pain and anguish, all to the plaintiff's damage in the sum of Fifteen Thousand Dollars ($15,000.00)."

The sole assignment of error is that the District Court erred in sustaining the demurrer to the declaration. In support of the ruling of the trial court, the appellee urges that the declaration was defective for failing "to aver (1) where or the purposes for which the defendant, Central Dispensary and Emergency Hospital, was incorporated, or its corporate powers, duties and functions; (2) that it is a corporation organized and operated for the purposes of gain and profit; (3) that its co-defendant, Dr. Francis Threadgill, was its agent and acted within the scope of his employment in making the alleged improper diagnosis of plaintiff's alleged injuries, and in the commission of the other acts complained of against him; and (4) that the plaintiff was charged by said defendant, or that he paid or contracted to pay it for services rendered or to be rendered to him." The appellee also urges in its brief that the court should take judicial notice that it is a charitable corporation.

1. Under its points (1) and (2) the appellee contends that it was necessary for the appellant to allege in the declaration that the appellee was a business corporation operating for profit, not a chari-

---

[1] The record does not disclose what action the defendant Threadgill took below; he is not a party to this appeal.

table corporation. The point has not been ruled on in this jurisdiction. The general rule of substantive law is that corporations, like individuals, are liable for their torts. Hence it would seem that a declaration against a corporation should be held to state a cause of action if it alleges merely negligence by the corporation proximately causing injury to the plaintiff, and that, if the corporate defendant seeks to escape liability under the doctrine obtaining in some jurisdictions that the general rules governing liability for tort do not apply to charitable corporations, it should be required to plead and to prove as a defense that it is a charity. The position taken by the appellee would require every plaintiff suing a corporate defendant in tort for negligence to anticipate the possible operation of such a doctrine by alleging and ultimately proving, if issue was joined, that the defendant was not charitable in character. This would place a grave burden upon plaintiffs—because proof that a corporation is a charity is much more readily available to it than to others, since it can easily produce its charter, books, and records, and demonstrate its legal purpose and the actualities of its operations. The appellee cites no authorities in support of its contention except Bauer v. Childrens Hospital, a decision of the trial court in 1927, reported in 55 Wash.Law Rep. 509, which we discuss below. And we find no authorities outside this jurisdiction supporting the appellee's contention. On the contrary the proposition that the charitable nature of a corporate defendant is an affirmative defense is adequately supported by authority. Lewis v. Young Men's Christian Ass'n, 206 Cal. 115, 273 P. 580, 1928; Inderbitzen v. Lane Hospital, 124 Cal.App. 462, 12 P. 2d 744, 13 P.2d 905, 1932; Pikeville Methodist Hospital v. Donahoo, 221 Ky. 538, 299 S.W. 159, 1927; Brennan v. Cabanne Methodist Episcopal Church, South, Mo. Sup., 192 S.W. 982, 1917; Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649, 1916; Barnes v. Providence Sanitarium, Tex.Civ.App., 229 S.W. 588, 1921; Sessions v. Thomas Dee Memorial Hospital Ass'n, 89 Utah 222, 51 P.2d 229, 1935; Susmann v. Young Men's Christian Ass'n of Seattle, 101 Wash. 487, 172 P. 554, 1918; see Bruce v. Young Men's Christian Ass'n, 51 Nev. 372, 378, 277 P. 798, 799, 1929.

In the course of its brief the appellee urges that the court should take judicial notice that it is a charitable corporation. It seeks to support this position in part by alluding to certain acts of Congress making appropriations for the erection of a new building, for the installation of a new elevator, and for the treatment of indigent patients under contracts to be made with the appellee by the District of Columbia Board of Charities; and the appellee cites Bauer v. Childrens Hospital, supra. In that case, which was also an action for negligence against a hospital corporation, there was, as in the instant case, no allegation in the declaration that the defendant was maintaining a hospital for profit and none that the care and treatment of the person alleged to have been injured were rendered for pay. But the trial court took judicial notice of the fact that Congress made annual appropriations to the defendant for the care of indigent patients, and therefore sustained a demurrer to the declaration upon the theory that the defendant was, in its relation to the patient alleged to have been injured, a charity. We think this ruling was wrong. Arguably such enactments indicate that Congress regarded the appellee at the time of the enactments as of a worthy nature, but they cannot be conclusive as to the legal status of a hospital corporation or as to the actualities of its operations. Congress gives subsidies to the merchant marine, but it is not a charitable institution. The appellee seeks further to support its position in respect of judicial notice by referring to the records of the trial court in other judicial proceedings as showing that the appellee is a charitable institution organized under D.C.Code (1929), tit. 5, c. 5, § 121 et seq., for the purpose of providing "a suitable building in the City of Washington, District of Columbia for a Dispensary where all needy persons, without distinction, may be provided gratuitously with medical and surgical service and treatment and with medicines." Insofar as the records in the judicial proceedings referred to are sought to be taken advantage of as judicial holdings that the appellee is a charity, they are unavailing, even if the proper subject of judicial notice, because they cannot conclude the appellant in the instant case since he was not a party to those proceedings. But the trial court could not take judicial notice of them and we cannot. A trial court cannot properly take judicial notice of the records in other proceedings before it between different parties. Murphy v. Citizens' Bank of Junction City, 82 Ark. 131,

100 S.W. 894, 12 Ann.Cas. 535; see Note, 11 L.R.A.,N.S., 616, 1907. And a court of appeals cannot take judicial notice of what may appear upon the records of the subordinate courts within the boundaries of its judicial jurisdiction; it can act only upon the facts appearing in the record before it. Fitzgerald v. Evans, 8 Cir., 49 F. 426, 1892; In re Manderson, 3 Cir., 51 F. 501, 1892; Divide Creek Irrigation Dist. v. Hollingsworth, 10 Cir., 72 F.2d 859, 96 A.L.R. 937, 1934; Bush v. Tecumseh Nat. Bank, 64 Neb. 451, 90 N.W. 236, 1902.

■■ A court can, of course, take judicial notice of local statutes, and if, therefore, there were a special act of Congress incorporating the appellee as a charity, judicial notice could be taken of that. See Hill v. President and Trustees of Tualatin Academy, 61 Ore. 190, 121 P. 901, 1912; Inderbitzen v. Lane Hospital, supra. But nothing in the record shows that the appellee was incorporated under a special act of Congress, and research discloses no such special act. Insofar as the general incorporation statutes passed by Congress for the District of Columbia are concerned, these provide for the incorporation of both business corporations (D.C.Code (1929), tit. 5, c. 9, § 261 et seq.) and benevolent corporations (D.C.Code (1929) tit. 5, c. 5, § 121 et seq.). But we are not advised by anything in the record whether the appellee is incorporated under those provisions relating to business corporations or those relating to charities. Only by taking judicial notice of the appellee's charter itself could that be determined, and respectable authority indicates that judicial notice cannot be taken of a charter. In Susmann v. Young Men's Christian Ass'n of Seattle, supra, a complaint alleged that the defendant was incorporated for the purpose of improving the spiritual, mental, social and physical condition of young men, that it operated a school at which tuition was charged equal to that of schools operated for profit, that the plaintiff paid tuition and that he was injured because of the negligence of a servant of the defendant. The trial court had sustained a demurrer to the complaint. The Supreme Court of Washington reversed, holding that judicial notice could not be taken that the particular defendant was essentially a charity—for the reason that the laws of the state permitted incorporation for both business and charitable purposes, and the answer to the question for which purpose a given cor-

poration is incorporated "depends upon the articles of incorporation and the manner in which it conducts its business thereunder." Again in Brennan v. Cabanne Methodist Episcopal Church, South, supra, a petition, in an action for personal injuries asserted to have been caused by the negligence of the servants of a corporation, alleged that the defendant was a corporation organized and existing under Mo.Rev.Stat. (1909), c. 33, art. 10, now Mo.St.Ann. § 4996 et seq., p. 2288 et seq. (Section 3435 of which article, now Mo.St.Ann. § 4999, p. 2291, provided for the incorporation of benevolent, religious, cemetery, educational, and scientific corporations) and that it was the owner and occupant of a building used for religious purposes and other public assemblies. The defendant demurred, urging that judicial notice should be taken that it was a religious corporation. The trial court sustained the demurrer upon this theory, but the Supreme Court of Missouri reversed, saying:

"We can only know] its [the corporation's] character from the charter granted to it by the state, and we have not been favored with this charter. We do not judicially know the contents of the charters of Missouri corporations. We may know what should be in such charters, when we are advised under what law the corporation is organized. But where the same statute provides for a number of corporations of different characters, and we are only advised generally that the corporation was organized under this law, we cannot judicially know the character of the corporation." [192 S.W. at pages 983, 984]

In Young v. Boy Scouts of America, 9 Cal. App.2d 760, 51 P.2d 191, 1935, the Fourth District Court of Appeals of California held that judicial notice could be taken that the Boy Scouts of America was a charitable corporation. But the case is distinguishable from the instant case because the Boy Scouts of America was incorporated by a special act of Congress, 36 U.S.C.A. § 21 et seq., under the terms of which it appeared that the functions of the corporation were charitable, and a California statute required the California courts to take judicial notice of both public and private acts, not only of the California legislature but also of the Congress of the United States. Cal. Code Civ.Proc. (Deering, 1937) § 1875.

■ But even if it be a fact that the appellee is incorporated as a charitable corporation and even if judicial notice could

be taken that it is so incorporated, this would not conclude the question whether or not it is a charity. We know of but one court which has taken the position that the charter of a corporate defendant is conclusive against a plaintiff upon this question. Morton v. Savannah Hospital, 148 Ga. 438, 96 S.E. 887, 1918. In New Jersey it is held that from the fact that a corporation was incorporated under a statute providing for the incorporation of charitable institutions, it will be presumed that it is charitable unless the contrary is shown. D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61, 127 A. 340, 1925. It has been held in Utah that articles of incorporation showing that a corporation was organized for profit are conclusive against the corporation itself. Gitzhoffen v. Sisters of Holy Cross Hospital Ass'n, 32 Utah 46, 88 P. 691, 8 L.R.A., N.S., 1161, 1907. But the same court has more recently said that a plaintiff may introduce extrinsic evidence to show that a corporation organized for charitable purposes is in fact engaged in profit-making activities. Sessions v. Thomas Dee Memorial Hospital Ass'n, supra. This statement was a dictum but it is consistent with the rulings in all other cases except Morton v. Savannah Hospital. All of the following hold that the true nature of a defendant corporation may be shown from the manner in which it conducts its business as well as from its articles of incorporation. Southern Methodist Hospital and Sanatorium of Tucson v. Wilson, 45 Ariz. 507, 46 P.2d 118, 1935; Stewart v. California Medical Missionary & Benevolent Ass'n, 178 Cal. 418, 176 P. 46, 1918; Levy v. Superior Court, 74 Cal.App. 171, 239 P. 1100, 1925; Stonaker v. Big Sisters Hospital, 116 Cal.App. 375, 2 P.2d 520, 1931; England v. Hospital of the Good Samaritan, 16 Cal.App.2d 640, 61 P.2d 48, 1936; Bruce v. Henry Ford Hospital, 254 Mich. 394, 236 N.W. 813, 1931; Bruce v. Young Men's Christian Ass'n, supra; Hamilton v. Corvallis General Hospital Ass'n, 146 Or. 168, 30 P.2d 9, 1934; see Paine, J., concurring, in Sibilia v. Paxton Memorial Hospital, 121 Neb. 860, 238 N. W. 751, 1931. We think these cases reflect the proper rule. If, therefore, the appellee in the instant case seeks to exonerate itself from liability by pleading as an affirmative defense that it is a charitable corporation, the trial court will consider not merely its charter, but also any competent evidence offered in respect of the actualities of its operations.

██ 2. Point (3) of the appellee—that it was necessary for the declaration to allege that the co-defendant Dr. Threadgill was the appellee's agent and acting within the scope of his employment in making the alleged improper diagnosis of the appellant's injuries—is not supported in the appellee's brief by either argument or citation of authorities. If, however, the trial court was for any reason correct in holding the appellant's declaration defective, we must sustain its ruling, and we are therefore bound to consider the point.

The only allegations of the declaration material to the point are that "Dr. Francis Threadgill [was] a physician at the Central Dispensary and Emergency Hospital," that "the said defendants, *and each of them,* improperly diagnosed the injuries sustained by the said plaintiff," and that the "plaintiff was again brought to the said Central Dispensary and Emergency Hospital where the said Dr. Francis Threadgill, *acting on behalf of himself and the said co-defendant, Central Dispensary and Emergency Hospital,* refused to admit the said plaintiff to the Hospital." (Italics supplied) The first of these allegations is nothing more than a statement that Dr. Threadgill was a physician at the hospital; for all that appears he might have been treating a patient of his own. The second allegation charges negligence directly to the corporation, as well as to Dr. Threadgill, and hence arguably alleges that this negligence occurred through an agent acting within the scope of his employment—this for the reason that a corporation can act only through an agent. The third allegation smacks of agency in the phrase "acting on behalf of . . . the . . . Hospital." But none of the three allegations sets forth what Dr. Threadgill's duties were, or what the nature of the relationship between him and the hospital was. That is to say, no facts are stated from which it can be determined whether or not Dr. Threadgill was acting within the scope of his authority.

██ We think nevertheless that the point made by the appellee is without merit. It is sufficient to charge negligence directly to the corporation. In Bank of the Metropolis v. Guttschlick, 14 Pet. 19, 10 L.Ed. 335, 1840, an action for specific performance of a contract made by a bank for the sale of land, which arose by writ of error to the Circuit Court of the United States for the County of Washington in the District of Columbia, an objection made to the declara-

tion was that the agreement of sale was averred to have been made by the bank "through the president and cashier" without averring their authority. The Supreme Court of the United States held this objection untenable saying:

"Now even assuming, for the sake of giving the objection its full force, that the making of this agreement was not within the competency of these officers, as such, yet it was unquestionably in the power of the bank to give authority to its own officers to do so. When, then, it is averred that the bank, by them, agreed, this averment, in effect, imports the very thing, the supposed want of which constitutes the objection: because, upon the assumption stated, the bank could have made no agreement but by agents having lawful authority. Nay, it would have been sufficient, in our opinion, that the bank agreed, without the words, 'through the president and cashier:' for it is a rule in pleading, that facts may be stated according to their legal effect. Now the legal effect of an agreement made by an agent for his principal, whilst the agent is acting within the scope of his authority, is, that it is the agreement of the principal. Accordingly, it is settled that the allegation that a party made, accepted, endorsed, or delivered a bill of exchange, is sufficient, although the defendant did not, in fact, do either of these acts himself, provided he authorized the doing of them. Chitty on Bills, 356, and the authorities there cited. This principle has been applied too, in actions ex delicto, as well as ex contractu. In 6 Term Rep. 659, it was held, that an allegation that the defendant had negligently driven his cart against plaintiff's horse, was supported by evidence, that defendant's servant drove the cart. In this aspect of the question, it was one, not of pleading, but of evidence." [14 Pet. at page 27]

This principle is consistent with the majority rule in the state courts in tort cases. It is commonly held that the acts constituting a cause of action may be alleged as the acts of the corporate defendant and that it is not necessary to aver that they were done by and through authorized agents. Evans Bros. Const. Co. v. Steiner Bros., 208 Ala. 306, 94 So. 361, 1922; Margolis v. United Dairy Co., 214 Ill.App. 613, 1919; Gould v. Eagle Creek School District, 7 Minn. 203, Gil. 145, 1862. There is also authority to the effect that where agency is alleged, a general allegation is sufficient without averring that the agent had authority in the premises. Writesman v. Pettis Dry Goods Co., 82 Ind.App. 504, 146 N.E. 835, 1925; Canada v. Yazoo & Miss. Valley R. R. Co., 101 Miss. 274, 57 So. 913, 1911; Britt v. Howell, 208 N.C. 519, 181 S.E. 619, 1935. See also in this connection the remarks of Mr. Justice Story in Childress v. Emory, 8 Wheat. 642, 670, 5 L.Ed. 705, 1823. [2] There is authority to the contrary—that a plaintiff should allege who were the officers or agents who committed the alleged tortious acts and that such acts were within the scope of their authority. Perkins v. Maysville District Camp-Meeting Ass'n, 10 S.W. 659, 10 Ky.Law Rep. 781, 1889; Molt v. Public Indemnity Co., 161 A. 346, 10 N.J. Misc. 879, 1932.

In Friedlander v. Rapley, 38 App. D.C. 208, 1912, a declaration alleged that "the defendant by his agent (acting within the scope of the duties of his employment) with force and arms made an assault on him, the plaintiff." This court held that a demurrer to this pleading was properly sustained, saying: "It is a familiar rule of pleading that where any fact is necessary to be proved on the trial, in order to sustain the plaintiff's right of recovery the declaration must contain a substantial averment of such fact in order to let in proof of it." The court thought that the averment quoted was a mere conclusion of law, in that it was not the statement of any fact showing that the one who made the assault was the agent of the defendant charged with the conduct of any matter which would make the defendant as principal responsible for

---

2 "Another cause of demurrer is, that the declaration does not aver that the note was signed by Joel Childress. To this it is sufficient to answer, that the declaration does state, that 'Joel Childress, by his agent, A. Childress, made' the note; and it is not necessary to state that he signed it; it is sufficient if he made it. The note might have been declared on as the note of the principal, according to its legal operation, without noticing the agency; and though it would have been technically more accurate to have averred, that the principal, by his agent, in that behalf duly authorized, made the note, yet it is not indispensable; for, if he makes it by his agent, it is a necessary inference of law, that the agent is authorized, for, otherwise, the note would not be made by the principal; and that the demurrer itself admits. (See Chitty on Bills, Appx.Sect. p. 528 and notes, id. Bayley on Bills, 103. 2 Phillips' Evid. ch. 1. s. 1. p. 4. 6.)"

either the agent's authorized or unauthorized acts done in the course of employment. There is a similar ruling in Clark v. Chesapeake & P. Telephone Co., 42 App.D.C. 444, 1914. In neither of these two local cases, however, was Bank of the Metropolis v. Guttschlick, supra, referred to, and this notwithstanding the fact that since the case reached the Supreme Court of the United States from the District of Columbia, the principle stated by the Supreme Court was binding for this jurisdiction. It has never been modified. We follow it. We overrule on the point in question Friedlander v. Rapley and Clark v. Chesapeake & P. Telephone Co.

3. The contention of the appellee under its point (1)—that the declaration is defective in failing to aver where the appellee was incorporated—is without merit. Actions in tort for negligence are transitory. The declaration alleges that the appellee is a corporation doing business in the District of Columbia. Where it was organized is not material to its liability in tort. No question is raised as to the sufficiency of the service of process, and the appellee appeared generally by demurring.

4. In view of the foregoing we hold that the declaration states a cause of action against the appellee as a corporation organized and doing business in a manner subjecting it to the usual rules of substantive law which hold a corporation, just as they hold an individual, responsible for tortious injury to others; and we hold that if the appellee seeks to avoid the application of these rules of law it must plead and prove as an affirmative defense that it is so organized and so conducts its business that it is excepted from their operation. Since such a plea and the proof which may be offered under it are not before us, we will not assume now to determine the law of this jurisdiction in respect of the liability of charitable corporations in suits for negligence. We ought not rule on this subject until all material facts are before us. This makes it unnecessary for us now, in respect of the appellee's point (4)—that the declaration is defective in failing to allege that the appellant was charged by the appellee or that he paid or contracted to pay the appellee for services rendered or to be rendered to him—to do more than comment that under the present pleadings such an allegation is unnecessary. The general duty of corporations and individuals to exercise due care not to injure others is not dependent upon any payment of money. It is a duty arising by operation of law rather than by contract, express or implied.

Reversed and remanded for further proceedings not inconsistent with this opinion.